# RICHARDSON v. CITY OF CASPER

(No. 1869; May 8, 1935; 45 Pac. (2d) 1)

For the plaintiff in error, there was a brief by *Durham & Bacheller,* of Casper, and an oral argument by *E. E. Enterline,* of Casper, for *Durham & Bacheller.*

220

For the defendant in error, there was a brief by *Hagens & Wehrli* and *E. E. Murane,* of Casper, and oral argument by *Wm. J. Wehrli.*

BLUME, Justice.

It is alleged in the petition filed in this case in the trial court on December 12, 1932, that the City of Casper, in 1931, created special improvement district No. 8 for the construction of sewers in accordance with Chapter 120, Sess. Laws 1915, embodied in Section 22-1501, R. S. 1931 and subsequent sections, the

cost and expense thereof to be paid by special assessments levied against the benefitted property in the district; that assessments were duly levied, and bonds were issued in the amount of $38,194.15, to defray such cost and expenses; that plaintiff is now and for some time past has been the owner of bonds Nos. 61, 62 and 63, thus issued, each being for the principal sum of $500, due February 12, 1932, and being the last of the series; that on February 12, 1932, the total of the bonds then outstanding was $14,000, while the total assessments still unpaid, including interest, amount to only the sum of $12,313.43, thus leaving a deficiency of nearly $1700, and leaving nothing to be applied on the bonds of plaintiff, even though all the unpaid assessments, together with interest, are paid up in full; that each of the bonds recites that the city has performed all acts and things required of it to be performed under the law; that it, however, failed and neglected to levy assessments against the benefitted property sufficient to pay all the bonds issued, together with interest thereon; that it wrongfully used money, paid as principal due on the assessments, in order to pay interest; that it also failed and neglected to collect the assessments with due diligence, merely sending out notices semi-annually; and that while it originally passed an ordinance for the enforcement of the foregoing assessments by the city, that ordinance was repealed in 1928; that plaintiff duly presented his claim to the council. He asked judgment against the city for $1500, together with interest from February 12, 1932. A demurrer to the petition, on the ground that it fails to state facts sufficient to constitute a cause of action, was sustained, and plaintiff electing to stand on his petition, the action was dismissed, and the plaintiff has appealed.

The action herein is not on the bonds, but is in tort, for the alleged failure of its duties on the part of the

city, and plaintiff insists that in view of the deficiency of $1700 above mentioned, and the fact that in no event will he be able to get anything out of the unpaid assessments levied, he is entitled to recover herein, notwithstanding that Section 22-1604, Rev. St. 1931 provides that each of the bonds issued shall provide, as it does, "that the principal sum therein named and the interest thereon shall be payable out of the local improvement, and not otherwise," and notwithstanding Section 22-1614, Rev. St. 1931, which provides:

"Neither the holder nor owner of any bond issued under the authority of this chapter shall have any claim therefor against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment, shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on each bond so issued."

It is pleaded in the petition, as already stated, that the defendant failed and neglected to levy a sufficient sum against the property in the improvement district to pay the bonds. This claim has been abandoned, for it is stated in the brief of counsel for plaintiff that the assessments actually levied were sufficient to pay all the bonds, and that for that reason, too, no right to any re-assessment exists. Nor is the validity of the assessments or of any of the proceedings questioned. The certificate, then, embodied in the bonds, that the city had performed all the things required of it to be performed, was true when made, and cannot be relied on as furnishing a cause of action for things happening subsequently. In fact a certificate of that character, broader in scope than the one here in question, was held to represent merely the honest judgment of the authorities that, if the instalments were collected with reasonable success, there would be enough to meet the bonds, and that a deficiency of $1,281.12 would not

furnish a basis for the claim of fraud. City of Winner v. Kelly, (CCA) 65 Fed. (2d) 955. In any event, if, as counsel state, the original assessment was sufficient, the deficiency of $1700, above mentioned, must have resulted from some cause arising subsequent to the levy. And that, in fact, is counsel's contention. They claim that it arose, as already indicated, by reason, first, of the fact that the city used money which was paid in as principal, in order to pay the interest on outstanding bonds, and, secondly, by reason of the want of diligence on the part of the city in collecting the assessments, and these facts are, in the petition, alleged as the basis for the liability of the city herein. The brief states that the use of amounts paid in as principal for the purpose of paying interest, when part of the property owners had defaulted was "bound to result in a shortage in the fund." How or why has not been pointed out. The reasoning is faulty. The fund consisted of money paid and unpaid, including that in default. The money paid in as principal could not, when used to pay interest, diminish the fund as a whole merely because it was money paid in as principal. Take, for instance, a fund consisting of various assessments, and amounting, on a semi-annual interest date, to the sum of $20,000, drawing interest at the rate of six per cent per annum, and against which bonds are issued in a like amount, drawing a like rate of interest. Suppose further, that on that date one of the assessments in the principal amount of $600, and $18 in interest, is paid in full, and all the other assessments are in default, thus compelling the city, if it desires to pay the interest on the bonds, to use the $600 paid on the principal. The fund will still consist of $20,000, made up of the $18 above mentioned, $19,400 due on the principal, and $582 of delinquent interest. Moreover, it has been held that the fact that the city has used money paid in as principal for the purpose

of paying interest does not furnish a ground for holding the city liable in tort. Bosworth v. Anderson, 47 Idaho 697, 280 Pac. 227, 65 A. L. R. 1372. Furthermore, we find no statute which contemplates two separate funds, one for the principal, and another for interest. Sec. 22-1610 appears to contemplate that interest on the bonds shall be paid first out of any money paid into the fund, and that the principal of bonds shall be paid only when there is sufficient money in the treasury, arising out of assessments, to enable it to do so. Hence we cannot see how the city can be held liable in tort for the action just now under discussion.

The deficiency of $1700, above mentioned, can probably be explained only on the theory that the amounts paid in, whether on principal or interest, were not immediately applied on the principal of the bonds outstanding, so far as possible, thus often reducing the interest payable into the fund, without at the same time reducing the interest payable on the bonds. The idea advanced by counsel for plaintiff, that payment of interest by principal diminished the fund, bears a resemblance to this thought, but is not the same. Theoretically, if the money had been applied on the bonds as soon as paid in on the assessments, the fund, if sufficient in the first instance, should have been sufficient throughout. But the attainment of such ideal balance has neither been provided for by law, nor, in practice, would be easily reached under the most favorable circumstances. Assessments apparently are limited to the cost and expenses of the improvement (Sec. 22-1521), and bonds are apparently authorized to be issued in the same amount, though not greater. Section 22-1604. But a deficiency will probably be ultimately found in every case, unless the total bonds issued are less in amount than the assessments levied, or unless other effective means of equalization are provided for by law. In the case at bar, the sum total of the bonds

apparently was equal to the sum total of the assessments. The deficiency might be partially due to the fact that some assessments would be paid up in full, but not in an amount sufficient to call and retire a bond in the sum of $500. We have here an inherent defect in the scheme of the law, which on the one hand leaves a way open for a tax-payer to pay his assessment in full at any time (Section 22-1547), stopping interest on that amount, without making adequate provision for stopping interest at the same time on the proportionate amount of bonds. South Dakota, as disclosed in City of Winner v. Kelly, supra, attempted to meet such situation at least partially by providing that the city should put the accumulation in the improvement fund out at interest. We have found no such provision in our law. Nor can we hold the city defendant here guilty of tort for a defect inherent in the law. Part of the deficiency above mentioned may be, and probably is, due to the fact that the city did not call and retire bonds as promptly as the money paid in on assessments enabled it to do so. Peculiarly enough, the law (Sec. 22-1610) seems to give the city merely the option to call in bonds not yet due, without making it compulsory to do so when money enough is on hand, thus in every case endangering the safety of the bonds callable last. The statute provides that the city *may* provide for retirement of bonds, whenever there is sufficient money on hand to do so. However, even if that provision could be held to be mandatory, it would not help herein, since the petition does not charge the city with any negligence or delinquency in this respect, and we are not, accordingly, called on to determine whether the city could be held in tort for delay in the matter just mentioned.

There is left for consideration the charge that the city made no proper effort to collect the assessments; that all it did was to send out statements semi-annu-

ally; further, that while it had passed an ordinance enabling it to collect the assessments, that ordinance was repealed in 1928. Section 22-1525, Rev. St. 1931, provides that the city may by general ordinance provide for the enforcement of the assessments and a sale of the property subject thereto. It is not, apparently, made obligatory upon it to do so. Nor is it made obligatory upon the city to collect such assessments. On the contrary, it is provided by Section 22-1613, Rev. St. 1931, that if it fails, neglects or refuses to pay the bonds or to promptly collect any assessments when due, the owners of the bonds may do so. A special remedy is, accordingly, given the bondholders. The question of liability for mere delay in collecting assessments has not often arisen in cases in which the primary fund for bonds consisted of special assessments. It has been held that non-collection alone does not show any dereliction in duty; that in fact delay might under some circumstances be beneficial, rather than detrimental to the bond-holder. First Catholic Slovak Union v. Scranton, 311 Pa. 500; Peake v. New Orleans, 139 U. S. 342, 35 L. Ed. 131, 11 Sup. Ct. 541. A case in point herein is New First National Bank v. Weiser, 30 Idaho 15, 166 Pac. 213. Our statute on special assessments and on bonds issued pursuant thereto seems to be modeled somewhat after that in Idaho. Section 4023, Comp. St. Idaho 1919 contains the same provision as our Section 22-1613, supra, namely, that in case of failure or refusal of the city to collect the assessments, the bondholders may do so. Sections 4018 and 4026, Idaho Comp. St. 1919 contain the same provision as our Sections 22-1604 and 1614, limiting the claim of the bondholders to the amounts realized from special assessments. It was held in the case last cited that the statute giving the right to bondholders to enforce assessments themselves gives them a plain, speedy and adequate remedy, which is exclusive, and

no recourse against the city is available. In Broad v. City of Moscow, 15 Ida. 606, 99 Pac. 101; Gagnon v. City of Butte, 75 Mont. 279, 243 Pac. 1085, 51 A. L. R. 966, and Moroney v. Surety Co., (Okl.) 31 P. (2d) 926, it was held that the city could not be held liable for failure to collect or for negligence in collecting assessments. In Pontiac v. Talbot, 94 Fed. 65, 48 L. R. A. 326, while not involving the exact point here under consideration, but considering a statute limiting liability, the court said that "no general doctrine of municipal liability for mere non-feasance in the failure or neglect of council or officers to perform a duty of the municipality can be extended to over-ride *per se* the inhibitions expressed" in the statute. In State ex rel. v. Hastings, 120 Wash. 283, 207 Pac. 23, the court held that it was the settled law of the state that "a city would not be rendered liable as a general indebtedness for its failure for any cause to levy and collect local assessments to pay purely local assessment obligations." In Union Trust Co. v. State, 154 Cal. 716, 99 Pac. 183, 24 L. R. A. (N. S.) 1111, it was said that so far as California was concerned "it must be taken to be settled that a provision in the contract that the city shall not be liable will prevent any recovery against such city if the assessments for any reason fail to discharge the cost of the work." A different situation would be presented if, as in Frush v. City of Portland, 6 Or. 281, and Morgan v. Dubuque, 28 Iowa 575, the city were primarily liable for the cost of the construction of the improvement, but that is not true here. Other authorities, having more or less bearing herein, and tending to show that the defendant herein should not be held liable, in this action, are Moore v. City of Nampa, (CCA) 18 F. (2d) 860, affirmed in 276 U. S. 536, 48 Sup. Ct. 340, 72 L. Ed. 688; Capitol Heights v. Steiner, 211 Ala. 640, 101 So. 451, 38 A. L. R. 1264; Powell v. City of Ada, (CCA) 61 Fed. 283;

City of Winner v. Kelly, supra; Severns Pav. Co. v. Oklahoma City, (Okl.) 13 P. (2d) 94 (containing an elaborate discussion). See also 44 C. J. 1237-1238, and note in 38 A. L. R. 1264 and 51 A. L. R. 973. Some of these cases hold that the city has been merely constituted an instrumentality of the law in initiating and carrying out the improvements and in collecting the money due upon the assessments. Gagnon v. Butte, supra; Moore v. City of Nampa, supra, and many cases cited.

Without separately analyzing the cases cited by plaintiff, suffice it to say that none of them were decided under statutes such as ours, which specifically absolve the city from liability and point out the remedy which shall be pursued by the bondholders in case of default in the assessments. Some of the cases cited were reviewed and distinguished in Severns Paving Company v. Oklahoma City, supra. In some instances, a municipality has been held liable for negligence because the duty of collecting assessments was its primary duty, and though there was a contractual limitation of liability, a duty of diligence on its part was implied. In the case at bar, there is not only a contractual limitation of liability, but also a statutory one. In such case no duty of diligence can be implied, at least in so far as the legislature has given a direct means of relief on the part of the bondholders, and at least in so far as liability for tort is concerned. Cases involving merely contractual limitation of liability stand on a different footing from those in which an act of the legislature must be considered. In the former, no public policy of non-liability is involved. In the latter, there is. In this state, the legislature has spoken unequivocally and emphatically. Plaintiff is charged with knowledge thereof. We cannot give him any relief herein without holding that the legislature has no right to establish a public policy to the contrary.

We do not see how we can do that. We think the trial court was right in sustaining the demurrer. The judgment herein must accordingly be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.