JANE GUERNSEY,

*Plaintiff and Appellant,*

vs.

THE CITY OF CASPER, a Municipal Corporation,

*Defendant and Respondent.*

(No. 2453; January 16th, 1951; 226 Pac. (2d) 523.)

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of R. N. Ogden of Casper, Wyoming.

For the defendant and respondent the cause was submitted upon the brief of William H. Brown, Jr. and Donald E. Chapin, both of Casper, Wyoming, and oral argument of Mr. Brown.

## OPINION

BLUME, Justice.

Jane Guernsey, plaintiff and appellant herein, brought this action against the City of Casper, a municipal corporation, to compel it to pay her special assessment bonds out of the general revenue funds of the city. From an adverse judgment against her, she has appealed to this court.

Sometime prior to 1920 the City of Casper created what was called Paving District No. 10. Assessments against the property in the district were duly levied and were presumably made payable in ten installments. Thereafter, the city issued 214 bonds in consecutive numbers, of the principal amount of $500 each, with 6% interest payable semi-annually. Each of the bonds was made payable only out of the local improvement fund created for the payment of the bonds and contained the following recitation: "Neither the holder nor owner of any bond under the authority of this act shall have any claim therefor against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment shall be confined to the enforcement of such assessments." The bonds were dated January 10, 1921 and were made payable on or before the 10th day of January, 1931 so that action to enforce the assessments—and so to enforce payment on the bonds—became barred not later than January 10, 1941 pursuant to Section 29-2041, Wyo. Comp. St. 1945 reading as follows: "An action to collect any special assessment or installment thereof for local improvements of any kind, or to enforce the lien of any such assessment or installment, whether such action be brought by a municipal corporation or by the holder of any certificate of delinquency, or by any other person having the right to bring such action, shall be commenced within ten (10) years after such assessment shall have become delinquent, or within ten (10) years after the last installment of any such assessment shall have become delinquent when said special assessment is payable in installments." The plaintiff and appellant became the owner of bonds numbered 141 and 142 of the foregoing paving district. Bonds up to the number of 138 were paid prior to January 10, 1941, except that funds were in the hands of the city to pay bonds 130 and

131. Interest was paid on appellant's bonds up to January 10, 1931 but nothing was paid thereon thereafter.

Just before the expiration of 20 years after the issuance of the bonds, namely early in January 1941, Charles A. Cullen brought an action in accordance with Section 29-2049, Wyo. Comp. St. 1945 to enforce payment of bonds held by him, all of which were of a higher number that those of appellant. Numerous parties, owners of property assessed in the foregoing district, were made parties defendant and foreclosure was sought on some 15 or 16 different parcels of property assessed as above mentioned. The court in that action found that Cullen was the owner of some 34 bonds issued as above mentioned commencing with No. 146 upward. Judgment was rendered in the action on September 5, 1941 except that judgment against one of the defendants was rendered on April 23, 1942. Foreclosure of the assessments was directed. The properties involved were directed to be sold to pay the bonds owned by the plaintiff and to satisfy the judgments in his favor, the amounts received to be turned over to him. The bonds were directed to be filed with the clerk of court and "that upon receiving said bonds so surrendered by plaintiff the clerk of court shall mark said bonds cancelled, and deliver them to the City Treasurer of said City of Casper, and the assessment against the above described property shall be cancelled upon the books of the City Treasurer."

Subsequent proceedings are not altogether clear. It seems that Cullen entered into compromises and settlements of the judgments against some of the parties (how many does not appear). In the compromise Cullen received but a small portion of the amount of the judgments, while at the same time he delivered bonds to the clerk of court equaling the amount of the assessments. If for instance, there was an assessment against a cer-

tain parcel of property of say $5000, Cullen received in settlement perhaps 20% of this amount but cancelled bonds of $5000 and released the judgments against the property. The record shows that the property had very much depreciated in value. Some of it had gone into the hands of the county as a result of the non-payment of general taxes, thus wiping out the lien of the assessments. The remainder of the property was worth much less than the assessments against it. The bonds were worth little. Cullen bought some of them for 10c on the dollar; others at 5c on the dollar. The clerk of court of Natrona County notified the city by two different notices—one on September 8, 1942 and one on May 12, 1944 that pursuant to the foreclosure action above mentioned, the assessment against Lot 1, Block 203 in the amount of $1610.37 and the assessment on Lots 9, 10, 11, 12, Block 41, Capitol Hill Addition in the amount of $7952.41 had been satisfied and discharged and that bonds 157, 158, 174 to 176, 178 to 183 and part of bond 184 had been surrendered for cancellation, and stating that pursuant to the judgment and order of court "you may show upon your records the payment of said assessments and retain the cancelled bonds in your files." The city complied with these notices. Whether any other assessments were released by the city in this connection does not appear.

The theory of the appellant in her second amended petition is that the city collected some 10 bonds commencing with bond No. 174 and upward; that the money so collected should have been applied on her bonds which are lower numbered bonds, and that the municipality diverted and misapplied these moneys to her detriment. The city denied that any money was collected on the foregoing bonds in connection with the judgment in the Cullen action, and that whatever bonds and assessments were cancelled, were cancelled pursuant to the judgment in the Cullen action and the notices sent to it by the

clerk of court of Natrona County. The evidence shows the contention of the city to be true. So we are not dealing here with a case in which a municipality has diverted funds actually received by it, and cases cited in connection with such a situation are not in point herein. Counsel for appellant, nevertheless, seems to contend, if we understand him correctly, that the city is chargeable as for money actually collected, insofar as assessments against parcels in the district are cancelled as above mentioned, or at least to the extent of the money which was collected by Cullen pursuant to the judgments above mentioned, although the amount thereof is not shown. It is not clear just what theory counsel adopts.

In that connection counsel contends that the district court of Natrona Countyy had no jurisdiction in the Cullen case directing that the money realized by Cullen by reason of the foreclosures therein should be paid to him, and should have made the order that all money collected pursuant to the foreclosures in the action should be applied in numerical order in accordance with Section 29-2051, Wyo. Comp. St. 1945, reading so far as applicable herein as follows: "The city or town treasurer shall pay the interest on bonds authorized to be issued by this Act (Sections 29-2001—29-2066) out of the respective local improvement funds from which they are payable. The council may provide that whenever there shall be sufficient money in any local improvement fund against which bonds have been issued under the provisions of this act, over and above sufficient for the payment of interest on all unpaid bonds, to pay the principal of one or more bonds, the treasurer shall call in and pay such bonds; provided, that such bonds shall be called in and paid in their numerical order in each series," etc. Counsel cites many authorities on the question of jurisdiction of the court, including the case of State vs. District Court, 33 Wyo. 281, 238 P. 545. We are inclined to

think that counsel have misconstrued the case above cited and other authorities, and that even though the judgment of the district court may have been erroneous, it nevertheless had jurisdiction to enter the judgment as it did. That will appear more clearly in what is stated hereafter.

Counsel for appellant contends or claims that the City of Casper was trustee for the bondholders who held the bonds involved herein. That may be conceded for the purposes of this case insofar as any money actually received by it from the assessments involved herein, and as to any of its own affirmative and voluntary actions which would diminish the security of the bondholders. Many authorities are cited (e.g. 54 Am. Juris. 455) holding that a trustee must defend and intervene in actions to protect the trust estate, and that the City of Casper should have intervened in the Cullen case above mentioned, so that the money obtained by Cullen should have been applied as above contended. These authorities are doubtless sound when applied in the proper case, but so far as we can see, they have no application in this case. We held in Richardson vs. City of Casper, 48 Wyo. 219, 45 P. 2d 1 that a municipality is not compelled to take any affirmative steps to enforce any special assessments such as involved herein, in view of the following statutory provisions, namely Section 29-2050, Wyo. Comp. St. 1945 reading as follows: "Neither the holder nor owner of any bond issued under the authority of this Act (Sections 29-2001—29-2066) shall have any claim therefor against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment, shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on each bond so issued," and in view of Section 29-2049, Wyo. Comp. St. 1945, reading as follows: "If the city

or town shall fail, neglect or refuse to pay said bonds or to promptly collect any of such assessments when due, the owner of any such bonds may proceed in his own name to collect such assessments and foreclose the lien thereof in any court of competent jurisdiction, and shall recover in addition to the amount of such bonds and interest thereon, five (5) per centum, together with the cost of such suit. Any number of holders of such bonds for any single improvement may join as plaintiffs and any number of owners of the property on which the same are a lien may be joined as defendants in such suit." If the municipality is not compelled to institute any action to protect bondholders such as involved in this case, it would seem to follow that it is not compelled to intervene in any action in order to do so. Moreover, the city had no knowledge of the Cullen action until the first of the certificates of the clerk of court above mentioned was filed with it in 1941. If appellant had looked after her interest properly she could have intervened in the Cullen action just as well as the city.

Counsel for appellant further seems to contend that the city had no authority to accept bonds of higher numbers than those of the appellant in payment of any assessments in the district and that when it did so, and cancelled assessments it became liable for the payment in full of appellant's bonds, even though it merely obeyed the order of the district court. It is true that the city was not a party to the Cullen action and the real question herein perhaps is whether or not it should have heeded the judgment of the district court above mentioned and whether, when it did so, it became liable to appellant. The authorities on the question before us are few. In fact, none of them are directly in point. There are special features in the case at bar which appear in no other cases that have been cited to us or which we have found. We shall briefly review the cases which are of interest herein with some comments of

our own which we deem proper. Before doing so, however, we might mention incidently that cases like Conter vs. State, 211 Ind. 659, 8 N. E. 2d 75, and Re Cranberry Creek Drainage District, 202 Wis. 64, 231 N. W. 588, 85 A. L. R. 242, which hold that a legislative action passed after issuance of bonds and providing for the payment of assessments by bonds, contrary to an earlier statute is unconstitutional, are not in point herein.

In Freeman vs. Town of Gallup, 152 Fed. 2d 273, the town was sought to be held liable for payment of special assessment bonds out of its general treasury because of not paying bonds in their numerical order. The town accepted bonds instead of money in paying higher numbered bonds. The majority of the court considered the act of the town to be in the nature of a tort, and that the statute of limitations had run against an action therefor. Judge Phillips, in a concurring opinion, stated as follows: "The wrong was the acceptance by the town officials of bonds instead of money in payment of assessments and the purported cancellation of the assessments of record. The town officials were wholly without legal authority to accept such bonds in payment or to cancel such assessments on receipt of payment in bonds. Their action in that respect was a nullity. The assessments were still valid and subsisting and the duty to collect them remained. Appellant's remedy was not for injury to, or conversion of, property, but a suit in equity to vacate the cancellation and reinstate the assessments on the town records, and to compel the collection of the assessments and the proper application of the moneys collected in payment of the bonds in numerical order." That case was decided under a statute of New Mexico which provided that the town or city was primarily bound to collect special assessments. The difference between that case and the case at bar is this: in that case a municipality voluntarily chose to disregard the statute providing that bonds should be called in their numerical

order, and voluntarily accepted bonds instead of money, while in the case at bar, the city cancelled assessments —the value of which was problematical—in pursuance of an order of court and at a time when the statute of limitations had run against the bonds of appellant, which was not true in the Freeman case.

The case of Crist vs. Town of Gallup, 51 N. Mex. 286, 183 P. 2d 156 was an action against the town of Gallup to recover the value of special assessment bonds made worthless by the act of the town in paying bonds out of their numerical order. It seems that the payments were made, partially at least, out of sums of money which had actually been collected and were paid into the town treasury. In addition to that, some bonds were accepted by the town from property owners as payment of the assessments and the liens against the property were released. The court, however, held that that was not a defense and apparently considered that the bonds which had been delivered in payment of assessments should be treated as so much money collected. The case is not in point herein for the reason that it seems that whatever action the city took was taken while all the various bonds of the special assessment district were still enforceable, and apparently while the district was solvent.

In Fidelity Trust Co. vs. Village of Stickney, 129 Fed. 2d 506 decided under the Illinois law, it appeared that the village collector improperly collected money for special assessments by arrangements with persons not property owners, whereby such persons purchased village bonds at a discount and then turned the bonds over to the collector with the understanding that the property owners designated by such person should receive a receipt in full on payment of less than the amount due. That was one of the methods pursued as mentioned in the case and under it about three-fourths of the

amounts due on the bonds was actually paid in money into the village treasury. Under a second method pursued, the village collector entered into an agreement with individuals whereby those individuals purchased village bonds at a discount and having collected from the property owners assessments less than the amount due, the bonds were turned into the village treasury to satisfy the assessments against the individuals assessed; but no money was collected under this method. The decision of the court on these points is as follows:

"It seems clear to us that under the so-called first method by which money was collected by the collector of the village, the village is liable for the amount of money the collector received. This constituted a trust fund, for the integrity of which the village was unquestionably liable. As for the balance which it did not collect, although it was its duty to collect it, the village is not liable. It could not be held its duty to preserve as a trust fund that which it had never possessed. * * * We come now to the second method, by which no money came into the hands of the village collector, and in which case Hammeda and Swobodka, the owners of the bond or bonds, had collected the money from the property owners in such amount as satisfied them and had then turned over the bond or bonds to the collector for cancellation. Under this method, no money came into the hands of the village collector. The trust fund theory could not apply because no fund was collected. The village collector had been guilty of an illegal act but the village, for the collector's default, neglect or mistake in the performance of his duty, cannot be held liable." It will be noticed that in this case a method of payment of assessments was pursued similar to that in the case at bar except, of course, that in the case at bar the assessments were cancelled, in pursuance of proceedings in the District Court of Natrona County. The case above cited relies very largely upon

the case of Conway vs. City of Chicago, 237 Ill. 128, 86 N. E. 619. In that case the municipal authorities granted rebate certificates to certain persons whose property had been assessed in a special assessment district, and received these rebate certificates in payment pro tanto of the assessments. The rebate certificates had been granted in good faith on the ground of the belief of the municipal authorities that the respective properties had been over-assessed. The Supreme Court of Illinois in denying liability of the municipality in such a case, stated as follows: "Through a misapprehension as to the legal basis upon which the special assessment should have been levied, these rebates were left with the taxpayers. If appellant is required to pay appellee these rebates, the effect of it will be to establish a general liability against the city for the mere neglect, default, or mistake of its officers in regard to the levying and collecting of a special assessment. It is true that appellant had no legal right to make such rebates, and all orders and proceedings purporting to authorize such rebates were null and void. * * * Appellee's remedy, in so far as the amount of these rebates is concerned, is by mandamus to compel the performance of whatever legal duties appellant is under in connection with the collection of these rebates from the taxpayers. It is suggested that difficulties arising out of the lapse of time will prevent the collection of the original assessment or the levying of a supplemental assessment covering these rebates. *However this may be, we are not inclined to extend the general liability of a municipality for special assessments beyond that which results from a failure to pay over money actually collected by it.* These rebates never having come into the hands of the city in cash, it is not liable in an action of assumpsit for them, on the theory that by the exercise of due diligence in the discharge of its legal duties it ought to have collected them." (Italics supplied). In the case at bar

there was no collusion between Cullen in the action above mentioned and the city treasurer. Whatever was done by the city was done in good faith and pursuant to proceedings in the District Court of Natrona County as above mentioned. These cases are perhaps more closely in point herein than any others and if we should follow the reasoning therein, it would seem that we should deny relief to the appellant herein.

In the case of Read vs. Abe Rosenblum & Sons, 115 Ind. App. 200, 58 N. E. 2d 376 it appears that the assessments made in a special assessment district were very much depreciated in value as in the case at bar. The action was to foreclose on the special assessments and in addition to that, to hold the city liable as for money collected for the special improvement fund in the treasury of the city. The court held that the right of action on these bonds was barred by the statute of limitations, and then states as to the liability of the municipality in view of that fact as follows: "Questions on the bond liability of the municipality have been resolved, we think, by the decisions of this and the Supreme Court to the effect that a city is in no way liable for the payment of improvement bonds except to the extent of moneys actually collected and accumulated by it from assessments made against property benefited. Rottger, Rec. v. City of Union City, 1936, 101 Ind. App. 438, 196 N. E. 355; Read v. Beczkiewicz, Treas., 1939, 215 Ind. 365, 18 N. E. 2d 789, 19 N. E. 2d 465." If we understand the case correctly, it would seem to decide that whenever bonds are unenforceable by reason of the bar of the statute of limitations, no liability thereafter arises on the part of the city, except for funds actually collected by it to pay these bonds.

In Johnson vs. McGraw, 139 Wash. 139, 245 P. 915 plaintiff, while apparently all the bonds of a special assessment district were still enforceable, brought an

action to foreclose local improvement bonds. The owners of bonds numbered 1 to 5 were not made parties and apparently were not known to the plaintiff who owned those bonds. The plaintiff sought to foreclose only upon certain designated lots and tracts. Plaintiff claimed the right to foreclose without making provisions for the payment of bonds 1 to 5 which were of a lower denomination than those of the plaintiff, but the court refused to enter a judgment unless provision was made for the payment of bonds of a lower number than those of the plaintiff. The statutes of Washington are very similar to the statutes in this state. The court in sustaining the action of the trial court relied largely upon Dillon on Municipal Corporations, Vol. II (5th Ed.) page 1293 which states as follows: "But when a judgment is recovered against the municipality on a warrant, the judgment as a general rule does not alter or destroy the priority of the holder of the warrant, or of the holders of other warrants on the fund. The remedies incident to the debt are carried into the judgment and are not lost or destroyed by merger; and, on the other hand, the rendition of the judgment does not entitle the judgment creditor to any priority over warrants which are by law entitled to prior payment." The author contemplated suits against the municipality on warrants payable by the city out of funds in its hands, and no reason would exist in such case for disregarding payments in numerical order. The author did not have in mind funds which never came into the hands of the city but which were turned over to a plaintiff in a foreclosure action pursuant to an order of court, and his statement above quoted hardly furnishes a sufficient basis for the holding in the Washington case. Counsel for appellant cites that case as holding that a plaintiff suing under Section 29-2049, supra, must at all events, permit the payment of earlier numbered bonds before receiving anything. However, it does not appear in the Washington case

either that the earlier numbered bonds were unenforceable by reason of the statute of limitations or that the special assessment district was insolvent, as is true in the case at bar. Section 29-2051 requires the payment of bonds in numerical order when called by reason of proper funds on hand in the treasury of the city. It makes no provision for any other case. The Washington case interpolates something into the statute that is not there. Wangnild vs. Town of Haxtun, 106 Col. 180, 103 P. 2d 474, is cited to us also holding that special assessment bonds must be paid in numerical order. That case involved money actually paid to the municipal treasurer. In the later case of Rising vs. Hoffman, 116 Col. 63, 179 P. 2d 430 the court held that a statute similar to Section 29-2051, supra, is applicable only when the special assessment district is solvent; that when it is insolvent the rule of equality prevails, citing Dillon on Municipal Corporations (5th Ed.) page 1392, Sec. 893, and a number of cases. See also Myers vs. City of Idaho Falls, 52 Ida. 81, 11 P. 2d 626, Smith vs. Boise City, Idaho, 104 Fed. 2d 933, 34 Fifth Decennial Digest under Municipal Corporations, Sec. 950 (10), 6 McQuillin, Municipal Corporations (2d Ed. Revised) Sec. 2504. That rule seems to apply, if at all, and has been applied, so far as we have found, as to funds actually collected by a municipality. What should be the rule when a bondholder brings an action under Section 29-2049, supra, and when no other bondholder intervenes, is not easily determined. It is usual in the ordinary case that a plaintiff in an action reaps the benefit of his diligence. The statute does not require that an action brought under the foregoing section of the statute must be a class action, that is to say, an action for the benefit of all unpaid bonds. Nor does it state that an action brought by anyone who has the right to foreclose must be brought, as counsel seems to contend, primarily for the benefit of the holders of the earlier numbered bonds.

It seems somewhat strange that, at least in the absence of a statute such as we find mentioned in McCann vs. City of Enid, 192 Okla. 495, 137 P. 2d 586, a party with higher numbered bonds should have to go to the trouble of bringing an action, incur expenses, engage counsel who perhaps will charge a fee of no small proportion, and then find, as counsel for the appellant contends, that in a case where the property assessed is very much depreciated as in the case at bar, all his trouble and expense has been largely and perhaps entirely for the benefit of someone else. That would seem to put a premium on negligence and bring discouragement to those who are vigilant. These observations and others that could be made show how difficult it is to arrive at definite decisions on various points under statutes which are as indefinite on the subject before us as ours.

Fortunately, for the present, we can limit our decision in this case. We are here dealing with foreclosure proceedings brought on the eve when the special assessments—and so the bonds—would be barred by the statute of limitations and in which judgments were entered at a time when this statute had run its entire length. The bonds of appellant were dead at that time or substantially so. 5 McQuillin, supra, page 1175. It is incongruous to say that life could be injected into the bonds by some subsequent action or inaction of the municipality in connection with a fund which came into existence subsequently, and that too, not in the treasury of the city, but in the hands of the clerk of court as a consequence of the diligence of some other bondholder. The right of action which the plaintiff had—and the exclusive one as we have seen—to enforce her lien, was created by statute, namely Section 29-2049, supra. Section 29-2041 already quoted fixes the time in which the action must be brought. It is said in 53 C. J. S. 975 that: "Where by statute a right of action is given which did

not exist by the common law, and the statute giving the right fixes the time within which the right may be enforced, the time so fixed becomes a limitation or condition on such right, and will control," etc. It appears to be the prevailing rule that it is not imperative to plead the statute in such a case. 54 C. J. S. 491, Section 357 b; 34 Am. Jur. 339, Section 429. Even if that were not so, we do not think that the hands of Cullen, of the court, and of the municipality were tied, but that they had the right to act in this case on the assumption that appellant was no longer making a claim by reason of her bonds after her action thereon was barred. We hardly think that it is our function or duty to discourage diligence and put, as already stated, a premium on negligence. We stated in Henning vs. City of Casper, 50 Wyo. 1, 31, 57 P. 2d 1264: "We do not think that a bondholder should be permitted to sit idly by, without any effort to enforce, * * * the lien which he has or which the statute contemplates he should have, so that he may thereafter have recourse to a better security— the general funds of the city." In Street's Foundations of Legal Liability, Vol. 1, Page 124 it is stated as follows: "It goes without saying that where injury or damage is attributable to the negligence of the sufferer himself, he had no right of action against another who may have been concerned in the mishap. A man is required to use reasonable precautions in looking out for himself and for his own." See also Munro vs. City of Albuquerque, 48 N. Mex. 306, 150 P. 2d 733. If appellant, instead of taking the advice of persons in Portland, Oregon, had consulted counsel at Casper, Wyoming, at the proper time, we have no doubt that she would have been able to collect at least part of the amount then due on her bonds. Unfortunately, she is

now too late. We do not accordingly see how we can escape the conclusion that the trial court was right, and the judgment herein is accordingly affirmed.

*Affirmed.*

KIMBALL, C. J., and RINER, J., concur.