Charles R. SPRATT, as trustee, Appellant (Plaintiff),

Gail Weinert-Fanning (Plaintiff),

v.

SECURITY BANK OF BUFFALO, WYOMING, a Wyoming Banking Corporation, and Charles B. West, Appellees (Defendants).

No. 5720.

Supreme Court of Wyoming.

Dec. 1, 1982.

---

2. Defendant did not appear in person or by counsel.

Charles R. Spratt, Buffalo, pro se.

Timothy S. Tarver of Koester & Tarver, Sheridan, signed the brief and appeared in oral argument on behalf of appellees.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This appeal is brought by Charles Spratt (appellant), in his capacity as trustee, from the judgment of the district court upholding the Security Bank of Buffalo's (appellee's) set-off against a certificate of deposit, issued in appellant's name as trustee, for the due debts of Gail Fanning, the bank's debtor. Gail Fanning was both the settlor and beneficiary of the trust, which had the certificate of deposit as its only asset.

Appellant phrases the issues he raises on appeal to be:

"1. Does the appellant as trustee have standing to bring suit against the appellees who seized the corpus of a trust to satisfy a debt owed by the beneficiary?

"2. Are the appellees precluded by law from asserting a right of set-off against assets deposited with them because of their knowledge of the existence of a trust in the case at bar?"

We will affirm.

This matter was submitted to the district court on the stipulated facts and briefs of both parties. Mike and Gail Weinert had lived in Buffalo as husband and wife. During their marriage the Weinerts twice borrowed money from the Security Bank of Sheridan: in January, 1979, $40,000 and in November, 1979, an additional $24,617.51. Each loan was evidenced by a promissory note secured by a mortgage on the same piece of real property located in Buffalo, Wyoming. The Weinerts both signed the notes and mortgages so were jointly and severally liable on both promissory notes.

Five days after the second note and mortgage were signed by the Weinerts, Gail Weinert filed for divorce from her husband. In December, 1979, the divorce was granted by decree in which Gail Weinert's maiden name of Fanning was restored and a house and lot in Buffalo were awarded to her. The house and lot were not part of the property which had been mortgaged to secure the two loans from the bank in Sheridan. In January, 1980, Gail Fanning sold the house in Buffalo and received a downpayment of approximately $13,000.

After selling the house, Gail Fanning and her attorney, appellant, who was also her employer, created a trust under which she was both the settlor and the beneficiary with the appellant named as trustee. The corpus of the trust was a certificate of deposit purchased from the Security Bank of Buffalo in the name of "Charles R. Spratt—Trust/45 North Main/Buffalo, WY 82834" made in the amount of $13,802.15, payable in six months, on July 7, 1980. The certificate of deposit was purchased with the proceeds of the house sale. Gail Fanning signed as depositor the agreement describing the bank's obligation in the event of early withdrawal located on the back of the certificate of deposit. The trust agreement was to be for two years but could be terminated at any time upon fifteen days' notice by the settlor. The trust instrument's only distribution provision provided:

"The Trustee may make ·distributions from such trust as requested by the Settlor [Gail Fanning] but in such amounts as are necessary in the discretion of the Trustee. Such discretion can be overrode by unanimous decision of those individuals listed on attached exhibit 'C'. [Exhibit C lists Gail Fanning and both of her parents.]"

At the time the certificate was purchased, the bank was not given a copy of the trust agreement but was made aware that the money used to buy the certificate belonged to Gail Fanning and that appel-

lant was only acting as her trustee. The purpose of the trust was to put the money in trust beyond the reach of Gail Fanning's ex-husband, his creditors, and the Internal Revenue Service. The latter purpose apparently failed because in February, 1980, Gail Fanning was forced to borrow approximately $5,000 from the Security Bank of Buffalo to pay a tax deficiency to the I.R.S. To secure the $5,000 loan, Gail pledged approximately $5,000 of the certificate of deposit to the Security Bank of Buffalo.

Sometime during this period, the Weinerts defaulted on the two promissory notes held by the Security Bank of Sheridan and a foreclosure action was instituted by that Bank. On July 2, 1980, the Security Bank of Sheridan sold and assigned the two notes and mortgages to the Security Bank of Buffalo for full value. At that time, the Security Bank of Buffalo was substituted as the plaintiff in the foreclosure action initiated by the Sheridan bank.

On July 3, 1980, the Security Bank of Buffalo, believing the value of the mortgaged property to be inadequate to cover the balance remaining on both notes, asserted a right to set off against the certificate of deposit. At the same time, the bank notified appellant and Gail Fanning that because the two notes signed by the Weinerts were in default, it deemed itself at risk and was, under the terms of the note, accelerating the payment due date of Gail Fanning's own note. Her $5,000 note was made due immediately and, because the bank felt itself insecure, the collateral used to secure the note was liquidated—approximately $5,000 worth of the certificate of deposit. The remainder of the certificate of deposit and accrued interest was applied against the two notes in default.

On July 7, 1980, appellant demanded payment of the certificate of deposit. Payment was refused because the bank had already set off against the deposit represented by that certificate; appellant filed suit.[1]

The mortgage foreclosure action was subsequently completed and a judgment of $67,798.16 was entered against Mike Weinert and Gail Fanning, jointly and severally. At the later sheriff's auction, the mortgaged property was sold for $41,000, leaving a deficiency of $27,798.17.

In its judgment in this case the district court in part found and held:

"2. and that upon consideration of the stipulation of facts and the Record, Gail Weinert-Fanning was the owner of the certificate of deposit, the funds of which were applied by the Bank [Security Bank of Buffalo] to the payment of the notes upon which Gail Weinert was liable;

"3. and that said Gail Weinert would have had no cause of action against the said Bank for its actions, and Charles Spratt [appellant] as trustee has no better standing than Gail Weinert as settlor and therefore, Mr. Spratt as trustee has no standing to maintain such action;

"4. and that Judgment should be entered in favor of the Defendants and against the Plaintiffs and the Defendants to recover their costs."

The first issue appellant would have us consider was prompted by the district court's language dealing with appellant's standing to maintain the action. In *Guernsey v. City of Casper,* 67 Wyo. 473, 226 P.2d 523 (1951), this court stated that it was a sound principle that a trustee must defend and intervene in actions to protect trust property. The Restatement, Trusts 2d § 280 provides:

"The trustee can maintain such actions at law or suits in equity or other proceedings against a third person as he could maintain if he held the trust property free of trust."

Appellant's conclusion was that he should have bought the certificate from a Massachusett's bank located in the hometown of Gail Fanning's parents, implying such a bank would have no debts to set off. Gail Fanning was appellant's legal secretary.

1. At sometime later, appellant, feeling somewhat responsible for Gail Fanning's predicament, in that according to his own deposition he "screwed up" in buying the certificate from the wrong bank, and, though not obligated by agreement to do so, paid her the over $8,000 set-off by the bank against the first two notes.

Section 4–8–103, W.S.1977, provides in part that:

"(c) A trustee has the power, subject to subsections (a) and (b):

\* \* \* \* \* \*

"(xxv) To prosecute or defend actions, claims or proceedings for the protection of trust assets and of the trustee in the performance of his duties."

Finally, where there is no conflict of interest between the beneficiary and the trustee, or between beneficiaries, the trustee may sue and be sued in suits dealing with trust property without joining the beneficiary. Bogert, The Law of Trusts and Trustees § 593 (Revised Second Edition, 1980). Since the joinder of the beneficiary is not at issue here, we merely cite the aforementioned for the proposition that trustees have standing to sue to protect trust property. That the claim may fail is irrelevant.

■ For a party to have standing to sue means that he has sufficient stake, in an otherwise justiciable controversy, to obtain a judicial resolution; whether a party has such a personal stake in the outcome to insure the dispute must be presented in an adversary context. *In the Matter of Various Water Rights in Lake DeSmet,* Wyo., 623 P.2d 764 (1981); *Sierra Club v. Morton,* 405 U.S. 727, 731–732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636, 641 (1972).

Appellee in its brief concedes that appellant had standing to sue in this case and, in fact, was allowed standing to sue. Appellee argues that the district court did not mean to imply that appellant was without standing to sue; it only meant, by the language in its order, that appellant was in no better position to recover from the bank than the beneficiary was since any defenses that applied to the beneficiary also applied to the trustee.

■ We need not try to interpret the language used by the district court because the action brought against the bank by appellant was allowed by the district court. A decision was rendered on the merits of the case. In answer to the question raised by appellant, however, we hold in fact and

law that he, as trustee, had standing to sue to protect the corpus of the trust. We make this preliminary decision because if appellant did not have standing, then we would need go no further. Standing to sue is jurisdictional in nature and can be considered at any time in the course of litigation. *In the Matter of Various Water Rights in Lake DeSmet,* supra. Parties cannot confer jurisdiction by consent. *Pioneer National Title Insurance Company v. Langdon,* Wyo., 626 P.2d 1032 (1981).

Appellant next asks us to consider the effect of the bank's knowledge of the trust relationship between him and Gail Fanning on its right to set off against the certificate of deposit. Appellant sets out two arguments for the proposition that, because of the trust, the bank, as a matter of law, could not set off against the certificate of deposit. First appellant argues that because the bank knew of the trust, the deposit evidenced by the certificate of deposit was a special deposit rather than a general deposit and, as such, not subject to set-off. Next, appellant argues that, because the debt evidenced by the certificate of deposit was owed by the bank to appellant as trustee, the certificate was not a mutual debt that the bank could set off against for the mature debts of Gail Fanning. We will deal with each of appellant's arguments separately; but, by way of an alert at this early point, we note that appellee's knowledge was something more than casual in that Gail Fanning treated the certificate without regard to the trust and dealt with the bank on that basis.

As to appellant's first argument, that the deposit here is a special deposit, it is generally held that a bank's right of set-off exists only against general deposits, i.e., deposits made in the normal course of business without restriction. *Federal Deposit Ins. Corp. v. Pioneer State Bank,* 155 N.J.Super. 381, 382 A.2d 958 (1977); *Atkinson v. Federal Deposit Ins. Corp.,* 635 F.2d 508 (5th Cir. 1981); rehearing 642 F.2d 145; See also, 5A Michie, Banks and Banking, § 114 (1973). Therefore, to address appellant's contention, we must determine whether the certif-

icate of deposit in question is a special deposit, as claimed, or a general deposit.

This court in *Gray v. Elliott,* 36 Wyo. 361, 255 P. 593, 594, 53 A.L.R. 554 (1927), discussed the distinction between special and general deposits when it said:

> " * * * There are but two kinds of deposits, special and general—those where the bank becomes trustee for a depositor by special agreement or under circumstances sufficient to create a trust, and general deposits, where the bank merely becomes the debtor of the depositor. * * *

> \* \* \* \* \* \*

> " * * * The mere fact that a depositor makes a deposit in a fiduciary, rather than individual, capacity, does not make the deposit a special one. [Citation.] The question is not what relation he or his fund bears to some third party, but rather whether a trust relation has been created between the bank and the depositor in connection with the fund. In order to make a deposit a special one, the bank must be made an agent rather than a debtor, and its agency or trusteeship cannot be created by mere external relationship of the debtor, unless, perchance, the law forbids the bank from becoming a debtor in such case. * * * "

The distinction made by this court in *Gray v. Elliott* is still in accord with the general view of the law held by courts today. See 5B Michie, Banks and Banking, § 328 (1973).

■ What is a certificate of deposit? A certificate of deposit amounts to a depositor's loan to a bank for an agreed period of time at a specified rate of interest. It creates the relationship of a general deposit; therefore, the basic principles which govern other types of bank deposits are applicable to certificates of deposit. *Atkinson v. Federal Deposit Ins. Corp.,* supra. A certificate of deposit has been defined as a written acknowledgment by a bank of the receipt of a sum of money on deposit with the bank which the bank promises to pay thereby creating a debtor-creditor relationship. *Federal Deposit Ins. Corp. v. Pioneer State Bank,* supra. A certificate of deposit has been held to be a general deposit because the issuance of a certificate creates the relationship of debtor and creditor between the bank and the depositor. *Bonhiver v. State Bank of Clearing,* 29 Ill.App.3d 794, 331 N.E.2d 390 (1975). Certificates of deposit can be negotiable instruments governed by the provisions of the Uniform Commercial Code. Section 34–21–304, W.S. 1977.[2]

■ Just because the Security Bank of Buffalo was simply made aware of the fact that a trust relationship existed or would exist between Gail Fanning and appellant, as claimed by appellant, does not enable us to say that the bank had entered into a special relationship with parties which would interfere with its right to set off against the deposit. The bank did not become a trustee. If the deposit evidenced by the certificate of deposit created a relationship of debtor and creditor between the bank and the owner of the deposit, then it was a general deposit. We hold that the fact that a trust relationship existed between appellant and Gail Fanning did not in itself affect the nature of the deposit evidenced ·by the certificate of deposit or the bank's ability to set off against it; therefore, since no trust relationship between the bank and the depositor existed, set-off was available.

■ We next reach appellant's claim that the bank's set-off should fail for lack of mutuality between appellee and Gail Fanning. Before going further, we need to discuss a bank's right to set off against the general deposits in its possession. The bank's right of set-off to secure the payment of its depositor's indebtedness is a part of the law merchant and well estab-

2. Although certificates of deposit can be negotiable instruments as defined by § 34–21–304, W.S.1977, the certificate of deposit at issue here was not a negotiable instrument. Section 34–21–304(a)(iv) requires that for an instrument to be negotiable, it must be "payable to order or to bearer" and the certificate here failed in that regard because no such language appeared on its face.

lished in commercial transactions. *Atkinson v. Federal Deposit Ins. Corp.,* supra. For a bank to establish a right to set off, three conditions must be met: "the fund to be set off must be the property of the debtor, the fund must be deposited without restrictions, and the existing indebtedness must be due and owing." *Federal Deposit Ins. Corp. v. Pioneer State Bank,* supra, 382 A.2d at 962. The bank's right to set off does not arise until the time the depositor's indebtedness to the bank has matured. *Bonhiver v. State Bank of Clearing,* supra. Addressing appellant's point, for set-off to be permissible, there must be mutuality of obligation between the debtor and his creditor, as well as between the debt and the fund on deposit. 5A Michie, Banks and Banking, § 115c. Debts to be used as set-offs must be due to and from the same persons in the same capacity. *United States v. Clawson,* 13 F.Supp. 178 (D.C.Wyo. 1935).

In the case before us, the only claim that is made is that there was a lack of mutuality which would defeat the bank's right of set-off. There is no question that Gail Fanning was indebted to the Security Bank of Buffalo on the two notes she and her ex-husband had signed. There is also no question that the debt evidenced by those two notes was due and owing—both were in default. The deposit evidenced by the certificate of deposit, we have decided, was a general deposit in the Security Bank of Buffalo. The question that arises then is who was the bank's depositor or, in other words, who owned the certificate of deposit? If it turns out that Gail Fanning was the depositor, there can be no question but that mutuality existed. If, on the other hand, appellant was the depositor, as he would have us believe, then the question of lack of mutuality is settled.

The district court in its order held that Gail Fanning was the depositor or owner of the certificate of deposit. We concur with that decision. Although the district court did not set out its reasons for reaching the conclusion that Gail Fanning owned the certificate of deposit, because we have the same facts before us, we are able to justify the district court's decision.

The facts that support the district court's holding can be quickly set out. In the first place, on the certificate of deposit itself the only signatures that appear are those of the bank's employee, Charles West, and Gail Fanning, who signed in the capacity of depositor. The appellant's typed name appears on the face of the certificate as having made the deposit; however, the fact that Gail Fanning signed the agreement on the back of the document as the depositor indicates who the depositor in fact was. The bank and everyone else apparently knew and considered that all of the money used to purchase the certificate belonged to Gail Fanning and viewed the "trust" as a pretense. Further, Gail Fanning treated the certificate of deposit as her own by pledging $5,000 of its value against a loan she procured to pay her taxes. This action was apparently taken with appellant's knowledge and without his interference or objection. Finally, it must be obvious that the only purpose of creating the trust in question was to put the money beyond the reach of Gail Fanning's ex-husband, his creditors, and the I.R.S. There are no viable facts for us to conclude that a spendthrift trust existed which would defeat creditors.[3] In this case, because Gail Fanning was jointly and severally liable with her ex-husband, his creditors on the joint debts were her creditors; and any attempt to use a trust to put the money beyond the reach of his creditors was an attempt to put the money beyond the reach of her creditors. Also, it should be remembered that on its face the trust in question was a revocable intervivos trust with Gail Fanning as both its settlor and sole beneficiary, the most fragile of trust relationships.

Taking these various factors into consideration, we are compelled to hold that the

---

**3.** A trust for the benefit of the settlor by which the alienation of his beneficial interest is restrained, is invalid as to creditors. Annot., 34 A.L.R.2d 1335, § 5, p. 1342 et seq. See also, Restatement, Trusts 2d § 156.

district court's decision that Gail Fanning was the owner in fact of the certificate of deposit was correct. That Gail Fanning signed the certificate as depositor, coupled with the fact that she actually purchased the certificate and later treated it as hers by using it as collateral, is sufficient to make her the owner. As to the bank, she acted in every way as the owner. Using that approach, we ignore the trust and hold it did not affect the certificate as a general deposit.

█ If we were to consider the trust as related to the certificate, on the other hand, we must do so remembering that the doctrine of the law of trusts is an equitable one. *Kane v. Kane,* Wyo., 577 P.2d 172 (1978). We must also keep in mind that it is well developed in the law of trusts that trusts created to delay, hinder or defraud creditors are not looked upon with favor by courts. Bogert, The Law of Trusts and Trustees, supra, § 211. In fact, intent to defraud creditors by use of a trust is illegal, with trusts so created considered invalid. Restatement, Trusts 2d § 60. Therefore, since Gail Fanning was jointly liable with her ex-husband on the debts at issue, her intent to put the money beyond the reach of his creditors turned out to be an intent to put her money out of the reach of her creditors. We cannot condone such an act. The district court for that reason could look beyond the trust and appropriately hold that Gail Fanning was the owner of the certificate of deposit.

█ However it is determined that Gail Fanning was the owner of the certificate of deposit and the bank's depositor, it is obvious that, as such, there is no question that mutuality existed between her and the bank. With mutuality between the bank and the "trustee" eliminated as a factor, we must hold finally that the district court did not err in upholding the bank's right to set off against the deposit represented by the certificate of deposit as actually owned by Gail Fanning.

Affirmed.