August 30, 1991

248

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

JOSE C. MAFNAS,

 Petitioner/Appellant,

 vs.

THE COMMONWEALTH OF THE
NORTHERN MARIANA ISLANDS

 and

ROBERT A. HEFNER,

 Respondents/Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

APPEAL NO. 90-025
CIVIL ACTION NO. 89-1110

OPINION

Argued and Submitted January 31, 1991

Counsel for Petitioner/Appellant: Theodore R. Mitchell, Esq.
 P.O. Box 2020
 Saipan, MP 96950

Counsel for Respondents/Appellees: Robert C. Naraja, Esq.
 James B. Parsons, Esq.
 Office of the Attorney General
 Commonwealth of the Northern
 Mariana Islands
 Capitol Hill
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

Jose C. Mafnas ("Mafnas") appeals the dismissal of his petition for declaratory and injunctive relief against the respondents, the Commonwealth of the Northern Mariana Islands

250

("government") and Robert A. Hefner ("Hefner"), who occupies the office of Presiding Judge of the Commonwealth Superior Court.

Mafnas alleges that Hefner unlawfully acts as Presiding Judge because he was never expressly appointed and confirmed to that office.

The Superior Court ruled that Mafnas' suit was "in the nature of quo warranto"--a proceeding testing an official's title to public office. Applying the common law rule that only the attorney general may bring such an action, the court held that Mafnas lacked standing and dismissed his petition.[1]

## I.

### BACKGROUND

In 1985, Hefner was appointed for a second six-year term to the office of Chief Judge of the Commonwealth Trial Court by the governor. His appointment was confirmed by the senate. According to the law at the time of Hefner's appointment, "[t]he Commonwealth Trial Court shall consist of a Chief Judge and at least (2) Associate Judges appointed by the Governor with the advice and consent of the Senate." P.L. 1-5, § 1 (1978). The duties and the authority of the Chief Judge were as follows:

. . . .

Chapter 2. Chief Judge.

Section 1. Chief Judge: Powers. The Chief Judge shall, in accordance with the rules of practice and

---

[1]Mafnas v. Commonwealth, Civil Action No. 89-1110, Order of Dismissal of Petitioner's Second Amended Petition (N.M.I. Super. Ct. Apr. 30, 1990).

procedures, prescribe the order of business, and assign the cases to the judges of the court. He shall see to the prompt and efficient administration of the business of the court and the clerk and the other officers of the court who shall be appointed by the Chief Judge pursuant to budgetary appropriation and who shall perform their duties under his supervision.

Section 2. <u>Chief Judge: Absence or Disability of</u>. During his absence, disability or in the case of a vacancy in the office of Chief Judge, his duties shall be performed by the judge who is senior in commission among the other judges of the Commonwealth Trial Court.

Section 3. <u>Chief Judge: Part-time Judges</u>. Unless otherwise provided by the rules of the Commonwealth Trial Court, the Chief Judge may appoint trial referees, receivers, part-time judges or other officers of the court to assist the court in disposing of its business.

. . . .

<u>Id</u>.

## Commonwealth Judicial Reorganization Act

In 1989, the legislature enacted P.L. 6-25, the Commonwealth Judicial Reorganization Act of 1989 ("Act"), revising P.L. 1-5.[2] The Act contains, <u>inter alia</u>, the following provisions:

. . . .

Section 3201. <u>Commonwealth Superior Court</u>. The Commonwealth Trial Court which was originally established by Public Law 1-5 is reestablished and renamed the "Superior Court of the Commonwealth of the Northern Mariana Islands." All incumbent judges of the Commonwealth Trial Court shall henceforth be judges of the Superior Court. The Superior Court shall consist of such divisions as the judges of the Superior Court may establish by rule.

. . . .

Section 3203. <u>Judges of the Superior Court</u>. The Commonwealth Superior Court shall consist of a full-time

---

[2] 1 CMC §§ 3101-3404.

Presiding Judge and at least two full-time Associate Judges. . . . .

Section 3204. Presiding Judge.
(a) The Presiding Judge of the Superior Court shall be appointed by the Governor with the advice and consent of the Senate.
(b) The Presiding Judge shall distribute the business of the Superior Court among the judges of the Superior Court and prescribe the order of business.
(c) During any absence, disability or vacancy in the office of the Presiding Judge, the duties of the Presiding Judge shall be performed by the judge who is senior in commission among the other judges of the Superior Court.

. . . .

Section 3304. Compensation of Judges.
. . . .
(c) The salary of the Presiding Judge of the Superior Court shall be $69,000.00 per annum.
(d) The salary of each Associate Judge of the Superior Court shall be $66,000.00 per annum.
. . . .

. . . .

Section 3401. Court Administration.
. . . .
(b) . . . . All employees of the Superior Court shall be appointed by and serve under the supervision and direction of the Presiding Judge.

Section 3402. Budget Responsibilities.
. . . .
(c) . . . . The expenditure authority for funds appropriated for the Superior Court shall be vested in the Presiding Judge.

. . . .

P.L. 6-25, § 3 (1989); these provisions were codified as 1 CMC §§ 3201, 3203, 3204, 3304, 3401 and 3402, respectively. The Act also grants the Presiding Judge the authority to propose rules concerning procedure, administration and fees. 1 CMC § 3403(b). References to "Chief Judge" in statutes concerning the Commonwealth

Law Revision Commission and the Commonwealth Recorder's Office were replaced with "Presiding Judge." P.L. 6-25, § 6.

Mafnas' Action

Mafnas originally filed his action in this Court, requesting that we exercise our supervisory jurisdiction over the Superior Court. Declining to do so, we transferred the matter to the Superior Court. Mafnas v. Hefner, Orig. Action No. 89-001 (N.M.I. Nov. 28, 1989).

After the action was transferred, Mafnas moved in Superior Court for summary judgment on February 2, 1990. To establish jurisdiction, he invoked, inter alia, NMI Const. Art. X, § 9, which authorizes taxpayers to sue the government to enjoin illegal expenditures.[3] The Superior Court sua sponte raised the question of his standing to bring the action and directed the parties to brief the issue.

In a response filed on behalf of both respondents, the government conceded that it did not challenge Mafnas' standing in Superior Court. It explained that Mafnas' standing had been earlier challenged on the basis that this Court was the wrong tribunal to hear the case. The government nonetheless urged that Mafnas' petition should be dismissed with prejudice. It did not, however, file an accompanying motion for dismissal.

In his response, Mafnas noted that the government did not challenge his standing.

_____

[3]The text of Article X, § 9 is set forth in the analysis, infra.

254

A summary judgment hearing was held on February 16, 1990. Mafnas requested the court not to entertain any motion to dismiss his action because the government neglected to properly plead or give notice that such a motion would be argued. The court again raised the issue of standing, and gave the parties leave for additional briefing.

In his response, Mafnas acknowledged that the proceeding was "in the nature of quo warranto"; the Attorney General characterized it as "an action in quo warranto."

In accordance with an agreement reached in a conference between the trial judge and counsel, Mafnas formally tendered prosecution of the case to the Attorney General in a letter dated March 2, 1990. Expressing strong opposition to Mafnas' action, the Attorney General declined the tender in a letter of March 6, 1990.

## Superior Court Ruling

On March 22, 1990, the trial court dismissed Mafnas' petition with prejudice. Ruling that his suit was in essence a quo warranto action and that common law rules governing such actions applied,[4]

> It follows that the central issue requiring the court's resolution is whether Mafnas, a private individual not claiming title to Hefner's office, may seek to raise the question of title to Hefner's office through an action in the nature of quo warranto. Based on the fact that Mafnas, under applicable common law rules, is precluded from instituting or maintaining quo warranto proceedings; that there exists in the CNMI no enabling statutory language specifically permitting Mafnas to maintain a claim sounding in quo warranto; that

---

[4]Pursuant to 7 CMC § 3401, U.S. common law rules are the "rules of decision" in the absence of NMI written law or local customary law to the contrary.

the nature of Mafnas' claim does not fall within the ambit of the type of taxpayer suits permitted in accordance with Commonwealth Constitution Article X, Section 9; that the Attorney General's Office has refused to question Hefner's title to office opting, instead, to vigorously defend his title to office, the authority by which he holds the office, and the integrity of his appointment and confirmation; that important policy considerations weigh against the continuation of these proceedings; and, that equitable considerations, such as the fairness of the litigation in the light of surrounding circumstances, weigh heavily in favor of Hefner and heavily against Mafnas, the court concludes that Mafnas lacked standing to initiate these proceedings and lacks standing to continue to maintain them[.]

Order of Dismissal of Petitioner's First Amended Petition for Declaratory and Injunctive Relief at 5, 6 (N.M.I. Super. Ct. Mar. 30, 1990).[5]

Mafnas appeals.

## II.

### ISSUES AND STANDARD OF REVIEW

The threshold issue is whether Mafnas has standing to bring this action. Since standing is jurisdictional,[6] it is a question of law, reviewable de novo. See, e.g., Matsumoto v. Akiyama, 3 CR 141 (D.N.M.I. App. Div. 1987) (decision to dismiss a complaint for lack of jurisdiction reviewable de novo).

If Mafnas has standing and it is therefore possible to consider the merits of his claim, we shall examine whether it is

---

[5]The Superior Court subsequently dismissed a second amended petition for the same reasons on April 30, 1990.

[6]See, e.g., Spratt v. Security Bank of Buffalo, 654 P.2d 130, 134 (Wyo. 1982) ("[s]tanding to sue is jurisdictional in nature"); Reitzer v. Board of Trustees of State Colleges, 447 A.2d 129, 132 (Conn. 1984) ("[s]tanding goes to the court's subject matter jurisdiction").

256

necessary to remand for such a ruling or whether this Court may rule upon the merits.

## III.

## ANALYSIS

## A.

Mafnas seeks: (1) a declaration that Hefner does not the hold the office of Presiding Judge; (2) an injunction preventing him from exercising the powers of and taking the benefits incident to the office; (3) an order directing him to pay the Commonwealth Treasurer sums he has received as salary since May 2, 1989, exceeding an annual rate of $66,000;[7] (4) an injunction prohibiting the Commonwealth from paying him a salary in excess of $66,000 per annum; and (5) attorney's fees and costs.

In essence, Mafnas challenges Hefner's right to hold the office of Presiding Judge because he has not been appointed and confirmed to that office. We concur with the Superior Court that the case is a proceeding "in the nature of quo warranto."

## The Writ of Quo Warranto

The writ of quo warranto originated in England several centuries ago. Under English common law, it could only be sought by the Crown.

In modern practice, quo warranto actions are usually brought to test the authority of persons claiming possession of public

_____

[7]As noted above, the salary of the Presiding Judge is $69,000 per annum. 1 CMC § 3304.

office and to oust them if they are usurpers. See generally II C. Antieau, The Practice of Extraordinary Remedies §§ 4.00-4.39 (1987) (hereafter "Antieau"). Such actions are sometimes the exclusive means for trying title to public office.

Issuance of a writ of quo warranto is customarily denied if a petitioner has another remedy at law or in equity that is fully as convenient and effective. Antieau, § 4.10. In deciding whether to grant the writ,

> It is the duty of the court to consider all the conditions, including immediate and remote consequences and to determine with a broad vision of the public weal whether on the whole the common interests demand the issuance of this extraordinary remedy.

Antieau, § 4.13, quoting Attorney General v. Methven, 129 N.E. 662, 667 (Mass. 1921).

Under common law, quo warranto proceedings are brought by the attorney general or prosecuting attorney on behalf of the government or at the relation of a private person. Antieau, §§ 4.15, 4.16.[8] Several states have enacted statutes revising this rule. Id., §§ 4.18-4.23. These statutes impose various conditions, permitting a private person to bring a quo warranto action only: (1) upon obtaining leave granted by the court; (2) if brought by one claiming the office at issue; (3) if the attorney general refuses to bring it; (4) upon obtaining "leave to sue" from the attorney general; or (5) in certain other circumstances.

---

[8]"At common law private individuals cannot in their own name bring quo warranto to try the title to public office or to oust alleged usurpers." Antieau, § 4.17, citing, inter alia, State ex rel. Sawyer v. La Sota, 580 P.2d 714 (Ariz. 1978).

Mafnas contends that the Superior Court erred in ruling that quo warranto applies in the NMI. He claims that quo warranto is a procedural form, not substantive common law, and that it has been effectively eliminated under certain NMI procedural rules.

Because of our analysis below, it is not necessary to determine whether quo warranto is merely a procedural form, and we decline to do so. We note, however, that 1 CMC § 3202 empowers the Superior Court "to issue writs of mandamus, certiorari, prohibition, habeas corpus, <u>and all other writs</u> and orders necessary and appropriate to the full exercise of its jurisdiction." (Emphasis added.) This language clearly grants the court the authority to issue writs of quo warranto. The writ has not been eliminated from NMI practice.

In some circumstances, courts have permitted actions "in the nature of quo warranto" that were not, in fact, quo warranto actions. <u>See</u>, <u>e.g.</u>, a line of Pennsylvania decisions: <u>Specter v. Martin</u>, 232 A.2d 729 (Pa. 1967) (equitable relief granted where district attorney, the appropriate party to bring quo warranto, could not be expected to bring the action against himself); <u>Chaflin v. Specter</u>, 233 A.2d 562 (Pa. 1967) (if equitable relief not granted immediately a later quo warranto action might necessitate removal of mayor, with attendant political chaos); <u>League of Women Voters v. Board of Commissioners</u>, 301 A.2d 797 (Pa. 1973) (public official enjoined from acting in official capacity even though remedy of quo warranto available because attorney general and district attorney refused to commence quo warranto action).

259

Mafnas has styled his action a taxpayer's suit.

## Taxpayer Suit

"It has been held . . . that title to office may be inquired into in a taxpayer's action to restrain waste of public funds, where there are no extraneous or disputed facts and the question depends wholly on the construction of a statute and the examination of indisputable records." 67 C.J.S. Officers § 82 (1978) (citing New York precedent).

NMI Const. Art. X, § 9 provides:

> A taxpayer may bring an action against the government or one of its instrumentalities in order to enjoin the expenditure of public funds for other than public purposes or for a breach of fiduciary duty. The court shall award costs and attorney's fees to any person who prevails in such an action in a reasonable amount relative to the public benefit of the suit.

We examine whether this provision[9] confers standing upon Mafnas.[10]

State courts are not bound by federal constitutional strictures on standing. See, e.g., Urban League of Essex County v. Township of Mahwah, 370 A.2d 521, 524 (N.J. Super. Ct. App. Div.

_____

[9]It is not disputed that the Superior Court has jurisdiction to entertain an action for declaratory and injunctive relief. See 7 CMC § 2421 (authorizing declaratory judgments and "[f]urther necessary or proper relief"). Mafnas does not, however, claim jurisdiction on this basis.

[10]At oral argument, counsel for the respondents informed the Court that it could appropriately rule on the merits, notwithstanding Mafnas' apparent lack of standing. The respondents have, in effect, conceded that Mafnas has standing. This they may not do--since standing is jurisdictional, it may not be conceded. Spratt, supra; see also 1A C.J.S. Actions § 59 (1985) ("[t]he standing of a party to bring suit is not subject to the parties' control"); 83 C.J.S. Stipulations § 10 (1953) ("[a] qualification to sue may not be supplied by a stipulation of parties or counsel").

260

1977) ("New Jersey is not . . . bound by federal rules of standing, particularly where rights under the State Constitution are brought into issue in the state courts"). Instead, standing is a self-imposed rule of restraint:

> [I]t is not a rigid or dogmatic rule but one that must be applied with some view to realities as well as practicalities. Standing should not be construed narrowly or restrictively.

Washakie County School Dist. No. 1 v. Herschler, 606 P.2d 310, 317 (Wyo. 1980), cert. den. 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980).

While it is the traditional view that actions to redress public wrongs or breaches of public duty ordinarily cannot be brought by private individuals, such rights of action may be granted by statute or rule. 59 Am.Jur.2d Parties § 33 (1987). In the NMI, the right of taxpayers to challenge allegedly illegal expenditures of public funds is expressly granted by our Constitution.

Even before the adoption of Art. X, § 9 in 1985, an NMI court expressly recognized the right of Commonwealth taxpayers to bring such actions. Manglona v. Camacho, 1 CR 820 (D.N.M.I. App. Div. 1983) (recognizing standing of Rota legislators as taxpayers to challenge payment of salaries to officials). Our constitutional provision explicitly recognizes the right of Commonwealth taxpayers to call their government to account in matters pertaining to expenditures of public funds. It is remedial in nature and should be liberally construed. See Holmes, 370 F.Supp. at 717, 718 (statute permitting taxpayer actions "is a remedial one, having the

salutary purpose of affording to Virgin Island taxpayers full and adequate relief from illegal actions of the territorial government and its officers"; taxpayer granted standing to challenge legislative act).

We hold that Mafnas has standing to bring the instant action as a taxpayer suit pursuant to Art. X, § 9.[11]

As noted above, Mafnas seeks both declaratory and injunctive relief. It is necessary to determine whether he may properly do so in this type of action.

Although Art. X, § 9 appears to authorize only injunctive relief, a court must first find that public funds are being (or will be) expended for other than a public purpose or in breach of a fiduciary duty. It must issue a declaratory judgment to that effect. We note that declaratory relief and injunctive relief often go hand in hand. "It may fairly be said . . . that implicit in a suit for declaratory relief is a prayer for supplemental injunctive relief, if necessary to protect the plaintiff's rights." Holmes v. Government of Virgin Islands, 370 F.Supp. 715, 717 (D. Virgin Islands 1974) (taxpayer action).

Mafnas contends that if Hefner is not legally the Presiding

---

[11]Another reason for not imposing stringent standing requirements in NMI taxpayer actions is the fact that there are relatively few taxpayers in the NMI, compared to most jurisdictions. As the Ninth Circuit Court of Appeals recognized in Reynolds v. Wade, 249 F.2d 73 (9th Cir. 1957), the smaller the population of a jurisdiction, the greater the pecuniary interest of its taxpayers in its treasury. Reynolds, which accorded a taxpayer standing to sue Alaska (then a territory) to enjoin unlawful expenditure of public funds, was cited with approval by the Manglona court.

Judge, an injunction should issue preventing him from receiving the additional salary specified for the office. Such an injunction must necessarily be based upon a declaration that the money is not being expended for a public purpose because Hefner is not legally entitled to the office he occupies.

We hold that Art. X, § 9 authorizes both declaratory and injunctive relief.

### B.

Having determined that Mafnas has standing to bring this action and may properly seek both declaratory and injunctive relief, we must now consider whether it is necessary to remand for a ruling on the merits.

For three reasons, we have concluded that it is not necessary to do so.

First, the material facts are not in dispute.

Second, the question depends wholly on the construction of statutes.

Third, the trial court has (at least implicitly) already ruled on the merits. "[E]quitable considerations at issue in this case, including the fairness of the litigation . . . weigh heavily in favor of Hefner and . . . against Mafnas." Order of Dismissal at 12. We also note that the court dismissed Mafnas' petition "with prejudice." Normally, such a dismissal is, in effect, an adjudication on the merits. Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); see also Sablan v. Iginoef, No. 89-008, slip op. at 10 (N.M.I. June 7, 1990)

263

("a stipulation for dismissal with prejudice of both a claim and a counterclaim in a quiet title action is res judicata of the matters covered by the lawsuit").

In passing, we must point out that because the court dismissed Mafnas' petition for lack of standing, it erred in considering the merits. Since standing is jurisdictional, a determination of lack of standing precludes a ruling on the merits. Spratt, supra.

The court also erred in dismissing the action with prejudice. As noted above, such a dismissal is effectively a ruling on the merits. Com.R.Civ.P. 41(b) provides, in part: "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction . . . operates as an adjudication upon the merits." (Emphasis added). Com.R.Civ.P. 41(b) is identical to Fed.R.Civ.P. 41(b). "[I]t is clear that for purposes of [Fed.R.Civ.P.] rule 41(b) a dismissal for lack of standing is a dismissal for lack of jurisdiction." McCarney v. Ford Motor Co., 657 F.2d 230, 234 (8th Cir. 1981).[12] Thus, a dismissal for lack of standing (i.e., lack of jurisdiction) should not be "with prejudice" (i.e., an adjudication on the merits).

We now proceed to address the merits.

When Hefner was reappointed and confirmed to a second six-year term in 1985, it was to the office of Chief Judge, pursuant to P.L.

---

[12]We have previously ruled that it is appropriate to consult interpretation of counterpart federal rules when interpreting commonwealth procedural rules; interpretation of such rules can be highly persuasive. Tudela v. MPLC, No. 90-011 (N.M.I. June 7, 1990).

1-5. It is not disputed that he has not been appointed by the governor and confirmed by the senate to the office of Presiding Judge.

Mafnas contends that the office of Chief Judge was abolished and replaced with an entirely new office, charged with different authority and duties. Since Hefner was never appointed and confirmed to the new office, Mafnas contends that he is not the Presiding Judge and may not exercise the powers of that office.[13]

The respondents contend that Hefner automatically assumed the office of Presiding Judge upon the effective date of the Act.

In addressing the merits, it is necessary to analyze the Act, which became effective on May 2, 1989.

Section 2 of the Act sets forth its purpose: the establishment of the Commonwealth Supreme Court as the appellate court of the NMI. The Act repealed and re-enacted Chapters 1, 2, 3 and 4 of Title 1 of the Commonwealth Code. While major changes were made to Chapter 3 (appeals) and Chapter 4 (the judiciary), only minor changes were made to Chapter 1 (the Commonwealth Trial Court) and Chapter 2 (the Chief Judge).

In restructuring the existing judicial system, the legislature reestablished and renamed the Commonwealth Trial Court as the Commonwealth Superior Court. The Act does not specify whether the office of Chief Judge is likewise reestablished and renamed as the office of Presiding Judge. It simply does not refer to the office of Chief Judge. It does provide that "all incumbent judges of the

---

[13]He concedes that Hefner remains a trial judge.

Commonwealth Trial Court shall henceforth be judges of the Superior Court." 1 CMC § 3201. All judges, including Hefner, were to remain in office for the duration of their term of office.

In order to determine whether Hefner automatically became Presiding Judge or whether he was divested of his position of Chief Judge, it is necessary to analyze the differences and similarities between the previous position and the new position.

As noted above, the legislature repealed and reenacted Chapter 2 of P.L. 1-5 with language establishing the new office of Presiding Judge.[14] In examining the change, we conclude that the differences in function and duties between the two offices are insubstantial. The similarities outweigh the differences.

First, both positions are the chief judicial offices of the same court. The Act did not create a new court--the Superior Court is the same court as the Commonwealth Trial Court. The court's jurisdiction remains the same under the NMI Constitution.[15]

Second, the nature and responsibilities of the office of Chief Judge and the office of Presiding Judge are essentially the same. P.L. 1-5 authorized the Chief Judge to prescribe the order of

---

[14]We note that since such a position is not mandated in the NMI Constitution, the legislature may choose not to specify any chief judicial officer for the trial court, or replace the office with an entirely different office--different not simply in name but also in function and duties.

[15]See NMI Const. Art. IV, § 2, which provides, in part:

> The Commonwealth trial court shall have original jurisdiction in all cases at law which involve land in the Commonwealth, and in all other civil actions. The court shall also have original jurisdiction in all criminal actions.

business, assign cases, "see to the prompt and efficient administration of the business of the court" and appoint and supervise court officers. Id., § 1. Similarly, the Act authorizes the Presiding Judge to prescribe the order of business, assign cases, "see to the prompt and efficient administration of the business of the court" and appoint and supervise trial court employees. 1 CMC § 3401.

Third, the changes made in the authority of the chief judge of the trial court under the Act are insubstantial. Most changes relate to some diminishment in authority due to the creation of the Supreme Court and the office of Chief Justice--the chief judicial office of the Commonwealth. However, the Presiding Judge remains the chief judicial officer of the Commonwealth trial court.

In essence, the offices of Chief Judge and Presiding Judge are the same.

The fact that the legislative history indicates that the office of Chief Judge was "abolished" is not determinative.[16] The substance of the statute creating the office of Chief Judge was reenacted. "If a statute creates a public office, the repeal of the statute, accompanied by the reenactment of the substance of it,

_____

[16]According to the report of the House Committee on Judiciary and Governmental Operations:

> The position of Chief Judge of the Trial Court is abolished and supplanted by the position of Presiding Judge of the Superior Court. The Governor shall appoint the Presiding Judge, with the advice and consent of the Senate.

House Standing Comm. Rept. No. 6-52, 6th Leg., 3d Reg. Sess. (Mar. 22, 1989).

does not abolish the office and substitute a new one for it; the effect is to continue the old one in force." <u>King v. Uhlmann</u>, 437 P.2d 928, 931 (Ariz. 1968). <u>See also</u> <u>Annotation: Effect of Simultaneous Repeal and Re-enacment of All, or Part of, Legislative Act</u>, 77 A.L.R.2d 336 (1961).[17]

We are not persuaded that, upon the effective date of the Act, Hefner was relegated to being an associate trial judge.

## IV.

We hold that, as Chief Judge of the Commonwealth Trial Court, Hefner assumed the office of Presiding Judge of the Superior Court upon the effective date of the Act. There was no need for the governor to appoint him and for the senate to confirm him to the renamed office.

The judgment of dismissal is REVERSED, and this matter is REMANDED for entry of judgment consistent with this opinion.

---

[17]We find no merit in Mafnas' claim that this interpretation of PL 6-25 effectively enabled the legislature to appoint Hefner to the office of Presiding Judge, abrogating the governor's exclusive authority to appoint Commonwealth judges. <u>See</u> NMI Const. Art. IV, § 4 ("[t]he governor shall appoint the judges of the Commonwealth courts with the advice and consent of the senate"). In fact, the legislature did not appoint Hefner to any office. It merely changed the name of the office he occupies.

Entered this ___30th.___ day of August, 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice