948 F.2d 678
 60 USLW 2371, 25 Collier Bankr.Cas.2d 1493,
21 Fed.R.Serv.3d 1444, Bankr. L. Rep. P 74,336
 In re UNIOIL, Debtor.
DALTON DEVELOPMENT PROJECT # 1, Appellant,
v.
UNSECURED CREDITORS COMMITTEE, Creditor-Appellee,
and
Unioil, a Nevada Corporation, Debtor-Appellee.
 No. 90-1111.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 4, 1991.
 
 1
 Thomas J. Kimmell (John M. Cogswell, with him on the brief) of Cogswell and Eggleston, P.C., Denver, Colo., for appellant.
 
 
 2
 Edwin G. Perlmutter (M. Frances Cetrulo, with him on the brief) of Berenbaum & Weinshienk, P.C., Denver, Colo., for creditor-appellee.
 
 
 3
 Jack M. Merritts (Thomas C. Deline, with him on the brief) of Montgomery, Little, Young, Campbell & McGrew, Englewood, Colo., for debtor-appellee.
 
 
 4
 Before TACHA and EBEL, Circuit Judges, and VAN BEBBER, District Judge.*
 
 
 5
 VAN BEBBER, District Judge.
 
 
 6
 This is an appeal from the order of the United States District Court for the District of Colorado affirming the bankruptcy court's decision to set aside certain assignments of interests in oil and gas properties. We affirm in part, reverse in part, and remand the case for further proceedings.
 
 I. FACTS
 
 7
 Unioil is an oil and gas exploration and operating company which filed its voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq., on August 17, 1984. Prior to and after the filing of its petition in the bankruptcy court, Unioil held legal and equitable interests in various oil and gas properties located in Larimer, Weld, and Yuma Counties, Colorado. (R.Vol. I, doc. 27 at 1-2.)
 
 
 8
 In March, 1985, the Unsecured Creditors Committee ("Creditors Committee") discovered that Unioil's vice-president, Melvin Lloyd Richards ("Richards"), was engaging in unauthorized post-petition transfers and payments. In response, the Creditors Committee and Unioil's largest creditor, Dowell-Schlumberger, Inc., filed joint motions with the bankruptcy court, seeking the appointment of a trustee and preliminary and permanent injunctions against Unioil and Richards prohibiting further transfers of Unioil's property. (R.Vol. IV at 24-25.)
 
 
 9
 A compromise was reached and a Stipulation of Settlement was entered into among Unioil, Dowell-Schlumberger, Inc., the Creditors Committee, and an eventual lender to Unioil, Joseph Associates, Inc., on March 27, 1985. (R.Vol. I, doc. 9, Ex. A.) The stipulation provided that Larry L. Snodgrass would be appointed to monitor Unioil's operations and to countersign any checks above $750. (Id.) The stipulation further provided that:
 
 
 10
 5. Unioil shall make no transfers of real or personal property without the prior order of the United States Bankruptcy Court for the District of Colorado or the prior written agreement of Unioil, Dowell-Schlumberger, Incorporated and the Creditors Committee which is approved by order of court.
 
 
 11
 The stipulation was subsequently approved and made an order of the bankruptcy court. (R.Vol. I, doc. 27 at 3.)
 
 
 12
 In June and July, 1985, Richards executed assignments of Unioil's interests in the Colorado oil and gas properties to various limited partnerships ("Partnerships") with which Unioil, Richards and other officers of Unioil were affiliated.[1] (R.Vol. IV at 29-30.) The assignments were made without the knowledge or approval of the Creditors Committee and Dowell-Schlumberger, Inc., and were never approved or authorized by the bankruptcy court.
 
 
 13
 In August, 1985, Unioil's Plan of Reorganization was confirmed and a closing was held on September 22, 1985. (R.Vol. I, doc. 3.) The unauthorized assignments were then discovered by the Creditors Committee during its attempt to foreclose on the Yuma County properties in April, 1987. Contending that the assignments were made outside the course of ordinary business and in violation of the bankruptcy court's order, the Creditors Committee filed a motion on April 2, 1987, asking the bankruptcy court to set aside the assignments made to four different limited partnerships. (R.Vol. I, doc. 4.) On July 23, 1987, Unioil joined in the motion of the Creditors Committee and also moved to set aside all of the assignments made to the Partnerships. (R.Vol. I, doc. 9.)
 
 
 14
 On September 29, 1987, the bankruptcy court conducted a hearing on these motions. At the hearing, the Partnerships stipulated that the assignments had been made in violation of the bankruptcy court's order and the March 27, 1985, Stipulation of Settlement. (R.Vol. IV at 25.) On December 7, 1987, the bankruptcy court entered an order setting aside the assignments, dismissing any lis pendens by the limited partnerships against the properties, and discharging and forever barring the claims of the Partnerships in the bankruptcy. (R.Vol. I, doc. 26.)
 
 
 15
 The bankruptcy court found that, as stipulated to at the hearing, the transfers of Unioil's interests to the Partnerships violated the March, 1985, stipulation and order of the bankruptcy court. The court also found that the assignments were outside the ordinary course of the debtor's business, and would have required notice and a hearing even without the March, 1985, stipulation and order. As for the Partnerships' entitlement to the assignments, the court found that the evidence presented at the hearing was inconclusive as to the amount of money invested by the Partnerships in the oil and gas wells. The court further found that the Partnerships and their limited partners had knowledge of Unioil's bankruptcy and that, despite such knowledge, no claims were filed by the Partnerships or the limited partners before the time for filing claims had expired on December 31, 1984, or before the time for filing amended claims had expired on February 28, 1985. (R.Vol. I, doc. 27, at 1-5.)
 
 
 16
 Based on these findings, the bankruptcy court made the following conclusions of law: The oil and gas interests were property of Unioil's estate under 11 U.S.C. § 541.[2] The assignments were void because they had been made without the court's approval and were outside the ordinary course of the debtor's business. The execution of the assignments by Richards was ultra vires and therefore, did not bind Unioil. The Partnerships and the limited partners were creditors of Unioil under 11 U.S.C. § 101(9)(A).[3] Because the Partnerships had actual knowledge of Unioil's bankruptcy and had failed to file any claims, their claims were forever barred, and they were bound by Unioil's plan of reorganization. Finally, the Partnerships had slept on their rights and therefore, were not entitled to any equitable relief. (Id. at 5-7.)
 
 
 17
 On March 14, 1990, the district court entered an order affirming the decision of the bankruptcy court to set aside the assignments. The district court held that the bankruptcy court's decision to set aside the assignments was a valid exercise of the bankruptcy court's equitable power to enforce its own orders. The district court also found that the bankruptcy court's findings of fact were not clearly erroneous. Because the district court found that the bankruptcy court had the authority to enforce its own orders, the district court concluded that it was not necessary to reach the other issues raised by the Partnerships and affirmed the bankruptcy court's decision. (R.Vol. III, doc. 4.)
 
 II. STANDARDS OF REVIEW
 
 18
 In reviewing the decision of the bankruptcy court, the district court is bound to accept the bankruptcy court's findings of fact unless they are clearly erroneous, but may examine its conclusions of law de novo. In re Branding Iron Motel, Inc., 798 F.2d 396, 399-400 (10th Cir.1986). A bankruptcy court's factual determinations will not be disturbed on appeal absent "the most cogent reasons appearing in the record." In re Reid, 757 F.2d 230, 233-34 (10th Cir.1985).
 
 
 19
 We likewise review the bankruptcy court's factual findings under the clearly erroneous standard, while its conclusions of law are reviewable de novo. In re Mullet, 817 F.2d 677, 678-79 (10th Cir.1987).
 
 III. DISCUSSION
 
 20
 Our jurisdiction over this appeal arises pursuant to 28 U.S.C. § 158(d). However, as an initial matter, we must determine whether the notice of appeal filed in this case is sufficient to confer appellate jurisdiction over all of the plaintiff partnerships or only over the appeal of plaintiff Dalton Development Project No. 1 ("Dalton Development") pursuant to Fed.R.App.P. 3(c).
 
 
 21
 Federal Rule of Appellate Procedure 3(c) requires that "[t]he notice of appeal shall specify the party or parties taking the appeal." Failure to name a party in a notice of appeal constitutes a failure of that party to appeal and will result in dismissal of the appeal for lack of appellate jurisdiction. Torres v. Oakland Scavenger Co., 487 U.S. 312, 314, 317, 108 S.Ct. 2405, 2407, 2409, 101 L.Ed.2d 285 (1988); Laidley v. McClain, 914 F.2d 1386, 1388-90 (10th Cir.1990).
 
 
 22
 The notice of appeal filed in this case identifies the appellants as "Appellant Partnerships, Dalton Development Project No. 1 et al. and other partnerships." (R.Vol. III, doc. 6.) Dalton Development contends that this designation is sufficient to constitute an appeal by all of the partnerships affected. However, the Supreme Court has specifically held that use of the phrase "et al." utterly fails to provide notice of the identity of the appellants. Torres, 487 U.S. at 318, 108 S.Ct. at 2409. Accordingly, we conclude that the appeals of the partnerships which are not specifically named in the notice of appeal must be dismissed for lack of jurisdiction. We have jurisdiction only over the appeal of Dalton Development, as the sole partnership specifically named in the notice of appeal, and proceed to address the merits of that appeal.
 
 
 23
 On appeal, Dalton Development argues that the district court committed reversible error in affirming the bankruptcy court's decision to set aside the assignments. It also argues that the district court erred in affirming the bankruptcy court's finding that Dalton Development's claims were discharged and contends that it was not given adequate notice of the bankruptcy proceedings. Finally, Dalton Development contends that the district court committed reversible error by failing to find that Unioil was barred from setting aside the assignments under the doctrines of unclean hands, estoppel by deed, promissory estoppel, and/or judicial cancellation of instruments, and by failing to find that Dalton Development was a bona fide purchaser and/or had equitable interests in the oil and gas properties at issue. As stated earlier in this opinion, we affirm in part, reverse in part, and remand the case for further proceedings.
 
 
 24
 We affirm the district court's determination that the bankruptcy court's decision to set aside the assignments was a valid exercise of the bankruptcy court's equitable power to enforce its own orders. Courts have the power to enforce their lawful orders. Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). Furthermore, the purpose of the Bankruptcy Code is the collection and equitable distribution of the debtor's estate to its creditors. In re May, 12 B.R. 618, 621 (N.D.Fla.1980); In the Matter of Universal Research Laboratories, Inc., 13 B.R. 856, 859 (Bankr.N.D.Ill.1981). The bankruptcy judge has the power to issue any order which is necessary or appropriate to protect the debtor's estate. In re Davis, 730 F.2d 176, 183-84 (5th Cir.1984); In re B.T. Wilson Drywall Construction, Inc., 36 B.R. 439, 442 (E.D.Ark.1983).
 
 
 25
 It is undisputed that the assignments of the oil and gas interests made by Richards in the summer of 1985 violated the March, 1985, stipulation and order of the bankruptcy court prohibiting transfers of Unioil's property without prior court approval. Moreover, the March, 1985, stipulation and order was entered for the purpose of preventing further unauthorized transfers by Unioil and Richards. (R.Vol. I, doc. 27 at 2-3.) Thus, the order was a lawful one which was necessary and appropriate for the protection of the debtor's estate. Since the assignments in question violated a lawful order of the bankruptcy court, we hold that the bankruptcy court had the inherent power to enforce its order by setting aside the assignments.
 
 
 26
 In addition, the bankruptcy court found that the assignments violated 11 U.S.C. § 363(c)(1) which provides in part that:
 
 
 27
 [U]nless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing....
 
 
 28
 The bankruptcy court concluded that, even if the transfers did not violate the court's order, the extensive assignments made by Richards were outside the ordinary course of the debtor's business and would have required a notice and hearing on the transfers. (R.Vol. I, doc. 27 at 5-6.) We agree with the bankruptcy court's findings and hold that the transfers were made in violation of 11 U.S.C. § 363(c)(1).
 
 
 29
 The bankruptcy court may issue appropriate orders in the enforcement of its jurisdiction and to carry out provisions of the Bankruptcy Code. 11 U.S.C. § 105; In re LJC Corp., 30 B.R. 292, 296 (Bankr.D.C.1983); In re Shafer, 63 B.R. 194, 197 (Bankr.D.Kan.1986). Since the assignments violated section 363(c)(1), we conclude that it was appropriate for the bankruptcy court to issue an order rendering those transfers null and void. Therefore, we affirm the bankruptcy court's order setting aside the assignments made by Richards.
 
 
 30
 However, we reverse the bankruptcy court's order insofar as it discharges the claims in bankruptcy of Dalton Development. The bankruptcy court found that the Partnerships, including Dalton Development, had actual knowledge of Unioil's bankruptcy and were, at a minimum, on inquiry notice to investigate Unioil's bankruptcy. Because the Partnerships had not filed any claims in the Unioil bankruptcy and because the time for filing claims had expired, the court concluded that the Partnerships' claims were overdue and therefore barred and that the Partnerships were bound by Unioil's reorganization plan. (R.Vol. I, doc. 27 at 6-7.)
 
 
 31
 Dalton Development contends that because it was not given formal notice of the bar date or confirmation hearing, it cannot be bound by Unioil's confirmed reorganization plan. We agree. In Reliable Electric Co., Inc. v. Olson Construction Co., 726 F.2d 620, 623 (10th Cir.1984), this court held that the discharging of a creditor's claim in a Chapter 11 bankruptcy under 11 U.S.C. § 1141(d)[4] without reasonable notice and an opportunity to be heard violated the creditor's Fifth Amendment due process rights. Under Reliable, a Chapter 11 debtor bears the burden of providing formal notice of the confirmation hearing to a known creditor before that creditor's claim may be discharged in bankruptcy. Reliable, 726 F.2d at 622. The confirmation of a Chapter 11 plan of reorganization cannot discharge the claim of a creditor who has not received constitutionally adequate formal "notice of the proceeding or of the confirmation hearing." Id. at 623.
 
 
 32
 Appellees cite In re Green, 876 F.2d 854 (10th Cir.1989), for the proposition that actual knowledge of the bankruptcy proceedings constituted constitutionally adequate notice to Dalton Development of the deadlines for filing claims with the bankruptcy court. However, we find that appellees' argument is inapposite since the decision in In re Green in fact confirms this court's holding in Reliable that formal notice is required in Chapter 11 cases.
 
 
 33
 In In re Green, it was held that a creditor who did not receive formal notice of the filing of a petition for bankruptcy relief under Chapter 7, but who had actual knowledge shortly after the filing, was bound by the bar date for filing complaints to determine dischargeability. In re Green, 876 F.2d at 855. Citing Reliable, the creditor-appellant in that case argued that it was deprived of due process since it did not receive formal notice. However, recognizing that "the statutory and substantive differences between creditor's rights under Chapters 11 and 7 cannot be gainsaid," this court rejected appellant's argument and held that "[b]ecause of the basic difference in the notice provisions of the relative statutes, the rule that governs notice and dischargeability in Chapter 11 does not apply in Chapter 7." Id. at 856, 857. Conversely, in the present case, the rule that governs notice and dischargeability in Chapter 7 does not apply in Chapter 11. Thus, the holding in In re Green has no application to the notice requirements for a Chapter 11 bankruptcy proceeding.
 
 
 34
 Furthermore, contrary to the bankruptcy court's conclusion that the Partnerships, including Dalton Development, were on inquiry notice as to Unioil's bankruptcy, the Supreme Court has held that:
 
 
 35
 As specifically applied to bankruptcy reorganization proceedings, ... a creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action. The creditor has a "right to assume" that he will receive all of the notices required by statute before his claim is forever barred. New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953).
 
 
 36
 Reliable, 726 F.2d at 622. Thus, despite the fact that the creditor in Reliable knew of the bankruptcy proceedings in general, we concluded that the creditor was not bound by the reorganization plan because it was not given "formal notice of any kind regarding the reorganization proceedings, or the time and manner for filing a claim ... prior to the confirmation hearing." Id.
 
 
 37
 In the case before us, although Dalton Development had, through its limited partners, actual knowledge of the pendency of Unioil's bankruptcy proceedings, it did not receive any formal notice of the deadline for filing proofs of claim, the time for filing objections to the reorganization plan, or the confirmation hearing. Despite Dalton Development's general knowledge of Unioil's bankruptcy, under Reliable, its claims could not properly be discharged in bankruptcy.
 
 
 38
 Unioil attempts to distinguish Reliable by arguing that, unlike the debtor in Reliable, it did not know that Dalton Development was a potential creditor. While it is true that none of the Partnerships were ever listed as creditors, Unioil was clearly aware of the existence of Dalton Development and of the fact that the partnership had invested money in Unioil for the drilling and development of the West Hardin well. (R.Vol. VII, First Amended Disclosure Statement, Ex. E.) Therefore, Unioil cannot claim in good conscience that it was unaware that Dalton Development was a potential creditor. Because Dalton Development did not receive formal notice of the bar date or the confirmation hearing, we reverse the bankruptcy court's decision barring Dalton Development's claims in bankruptcy and hold that the partnership is not bound by Unioil's confirmed plan of reorganization.
 
 
 39
 Finally, as listed above, Dalton Development has raised several other arguments concerning its entitlement to either equitable or legal title to the oil and gas interests in question. In light of our holding that the transfers in question were unlawful and that the bankruptcy court had the power to set aside the assignments, those issues are irrelevant and we do not address them. Accordingly, the decision of the district court is AFFIRMED in part and REVERSED in part. The case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable G.T. Van Bebber, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 The Partnerships had been formed in 1981 and 1982 for the purpose of financing the drilling of oil and gas wells on the properties at issue. (R.Vol. IV at 53-55.)
 
 
 [2]
 Under 11 U.S.C. § 541(a)(1), the property of the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case."
 
 
 [3]
 A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C.S. § 101(9)(A) (Law.Co-op.1985) (current version at 11 U.S.C.S. § 101(10)(A) (Law.Co-op.Supp.1991))
 
 
 [4]
 11 U.S.C. § 1141(d) provides in pertinent part:
 (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--
 (A) discharges the debtor from any debt that arose before the date of such confirmation ... whether or not--
 (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title.