In re Thomas R. PANCRATZ and Kathleen A. Pancratz, Debtors.

Randy L. ROYAL, Chapter 7 Trustee, Norwest Bank Wyoming Casper, N.A. and Key Bank of Wyoming, Appellants/Cross–Appellees,

v.

Thomas R. PANCRATZ and Kathleen A. Pancratz, Appellees/Cross–Appellants.

No. 92–CV–0126J.

Bankruptcy No. 89–05148–A.

United States District Court, D. Wyoming.

Nov. 8, 1994.

Donn J. McCall, Brown & Drew, J. Scott Burnworth, Casper, WY, for appellants/cross-appellees.

Randy L. Royal, Chapter 7 Trustee, Greybull, WY.

Thomas M. Hogan, Stephen R. Winship, Winship & Associates, Casper, WY, for appellees/cross-appellants.

*ORDER AND OPINION ON*
*BANKRUPTCY APPEAL*
*TO DISTRICT COURT*

ALAN B. JOHNSON, Chief Judge.

This matter comes before the Court on an appeal from the April 13, 1992 Order on Second Claim of Exemptions and Decision on Second Claim of Exemptions, of the United States Bankruptcy Court for the District of Wyoming. This Court, having reviewed the record on appeal, the briefs of appellants and appellees, and being fully advised in the premises, finds that the bankruptcy court's Order and Decision on Second Claim of Exemptions should be affirmed in its entirety, and further FINDS and ORDERS as follows:

**Background**

The appellants in this case include Randy Royal, the Chapter 7 bankruptcy trustee for the estate of the debtors Thomas R. Pancratz and Kathleen A. Pancratz, Norwest Bank Wyoming Casper, N.A. and Key Bank of Wyoming. The appellees are the debtors, Thomas R. and Kathleen A. Pancratz.

Thomas Pancratz became the majority stockholder in Pancratz Company in the early 1960's. He had been involved in the business with his father since the late 1940s.

In January 1983, the debtors created the "Pancratz Family Trust Agreement" (the "1983 Trust"), a revocable trust, with the debtors as trustee along with their adult son, George. Into the 1983 trust, they transferred many assets, including notes receivable, stock certificates controlling 60% of Pancratz Company, stock certificates in various other companies, bonds, insurance policies, vehicles, interests in limited partnerships and interests in real property.[1]

Norwest was the operating lender for Pancratz Company throughout the 1980s. In August 1985, debtors personally, and as trustees of the 1983 trust, executed separate continuing commercial guaranties for the debts of Pancratz Company to Norwest Bank. These guaranties were absolute and unconditional and included negative pledge agreements. Key Bank also made loans to the 1983 trust to finance its purchase of various equipment and real estate.

In January 1988, Thomas Pancratz learned that Pancratz Company was in poor financial condition and decided to retire from the business. He consulted with counsel regarding his retirement in 1988. In February 1988, Thomas Pancratz announced his retirement as president of Pancratz Company and accepted an appointment on the company's Board of Directors. He continued to be actively associated with the company and continued to deal with Norwest regarding financing for the company, including providing information on corporate assets.

In March 1988, Norwest required the debtors to execute new personal guaranties for the debts of the Pancratz Company. Mr. Pancratz also executed a commercial guaranty on behalf of the 1983 trust. In October 1988, the Pancratzes revoked the 1983 trust, with the remaining assets revesting in them pursuant to the terms of the 1983 trust. Norwest was not notified of revocation of the 1983 trust.

The financial condition of the Pancratz Company continued to deteriorate, and the company attempted to borrow $200,000 from Norwest in November, 1988, for the purpose of providing cash flow to pay accounts payable and complete jobs in progress. At a meeting with the bank November 17, 1988, the bank advised Mr. Pancratz that Norwest would not extend any further financing. After learning that Norwest would no longer extend financing to Pancratz Company (whose obligations were personally guaranteed by the debtors), the debtors created the 1988 Trust. The debtors were both settlors and beneficiaries of the 1988 trust. They appointed Mary Ellen Pancratz, their daughter, as trustee. They then transferred assets to the 1988 trust, all of which were totally unencumbered by any liens or mortgages. These assets included, among other things, the two annuities and the 1986 Nissan Maxima at issue in this appeal, and a life insurance policy. The record on appeal does not reflect clearly that the assets that are now at issue were ever part of the 1983 trust property, with the exception of the life insurance

---

1. *See* Record on Appeal, Vol. I at 485, which lists property transferred to the 1983 revocable trust.

policy. Additionally, appellants have not challenged the bankruptcy court's disposition with respect to the life insurance policy in this appeal, and matters concerning the life insurance policy require no discussion from this Court.

The 1988 Trust was nonrevocable and contained a "spendthrift" clause attempting to place trust assets away from the claims of creditors of the debtors. The 1988 trust never executed a guarantee of any debts of the Pancratz Company in favor of any creditor.

On December 1, 1988, Mr. Pancratz and others met with bank officials. Norwest agreed to make an additional operating loan to the company for $60,000 if the Pancratzes would pledge their unencumbered Casper home as collateral. Instead of mortgaging their home to Norwest, Mr. Pancratz obtained a $60,000 loan on December 2, 1988 from Hilltop National Bank, secured by a loan on their home. On December 7, 1988, Mr. Pancratz transferred $58,700 of the loan proceeds directly from Hilltop National Bank to Mary Ellen Pancratz as trustee of the 1988 trust.

On March 30, 1989, Norwest made demand on the personal guaranty in the amount of $1,098,253.91. Norwest still did not know of the revocation of the 1983 trust. Norwest did not learn about the 1988 trust until after it had made demand on the Pancratzes and the 1983 trust in March of 1989. Norwest contends, of course, that the transfer of property into the 1988 trust shortly after revocation of the 1983 revocable trust diminished the collateral that would otherwise have been available to Norwest under the terms of the 1983 trust guaranty, leaving it with a large unsecured, unsatisfied debt.

Two separate involuntary Chapter 7 petitions were filed against the individual debtors Thomas R. Pancratz and Kathleen A. Pancratz on May 31, 1989 by Key Bank and Norwest Bank.[2] Pursuant to stipulation between the debtors and creditors, the bankruptcy court entered an order for Chapter 7

relief on both involuntary petitions on July 11, 1989. The cases were consolidated for substantive purposes on July 12, 1989. The debtors filed appropriate schedules of assets and liabilities, listing their interests in the 1988 trust, annuities, life insurance, and other various items of property.

The Chapter 7 trustee later brought an adversary action, and prevailed, in which he sought to recover assets of the estate, including the annuities, life insurance, vehicle, and other property conveyed by the debtors prepetition to the self-settled trust created in 1988. In that adversary proceeding, the Chapter 7 trustee alleged that the transfers of property into the 1988 trust were ineffective, as a matter of law, to place the property beyond the reach of the bankruptcy creditors and that the property therefore remained property of the bankruptcy estate. Alternatively, the Chapter 7 trustee contended the transfers into the 1988 Trust were fraudulent transfers. In the adversary proceeding, the Chapter 7 trustee sought turnover from the trustee of the 1988 trust, Mary Ellen Pancratz, the Pancratz's daughter, or to recover the trust property as a voidable fraudulent conveyance.

On January 8, 1991, in the adversary proceeding, the bankruptcy court determined that all property conveyed to the 1988 trust was property of the estate and was to be turned over and reconveyed to the Chapter 7 trustee. The bankruptcy court also later entered a money judgment against the debtors and Mary Ellen Pancratz for the money and property distributed from the 1988 trust after requiring submission of a full accounting by Mary Ellen Pancratz for all transactions, deposits, withdrawals, distributions and expenditures of or affecting the 1988 trust.

On February 12, 1991, the debtors filed an amended Schedule B–4 (their Second Claim of Exemptions) asserting that substantially all of the assets they had originally transferred into the 1988 trust were exempt. The creditors, appellants in the instant appeal, objected to the debtors' claimed exemptions.

**2.** When the involuntary petitions were filed, the petitioners were Key Bank of Wyoming, formerly known as First Wyoming Bank–Casper, and Wyoming National Bank Casper, formerly known as Norwest Bank Casper, N.A. Throughout this order, the creditors will be referred to as Key Bank and Norwest.

The bankruptcy court determined, following hearing on the objections to the claimed exemptions in 1992, that the debtors could exempt the following property from their bankruptcy estate:

1. All payments due under the Presidential Life Annuity Contract No. 526075, under Wyo.Stat. § 26–15–132, except the amount of $404.85 that was presently due and payable on the date of filing of the involuntary bankruptcy petitions;

2. All of the United of Omaha Annuity Contract No. 4043938, under Wyo.Stat. § 26–15–132 because no payments were presently due and payable on the date of the bankruptcy petition;

3. The National Life Insurance Policy No. V13069965, and its cash value under Wyo.Stat. § 26–15–129.

The bankruptcy court determined further that the debtors could not claim an exemption for the 1986 Nissan Maxima under Wyo. Stat. § 1–20–106(b) (1977, Repl.1988), the statute that was in effect on the date of filing of the involuntary petitions, for the reason that the debtors were not engaged in a "trade" on the petition date.

The bankruptcy court determined that the property at issue and recovered in the adversary proceeding was property of the debtors' Chapter 7 bankruptcy estate pursuant to Section 541(a) of the Bankruptcy Code. In the case where the trust was self-settled, the property remained at all times available to their creditors, and was therefore property of the bankruptcy estate. In such circumstances, the bankruptcy court reasoned there was no fraudulent transfer because the property came into the bankruptcy estate unhindered by the anti-alienation clause of the 1988 Trust. The importance of this is that the debtors could then claim the property as exempt property, contrary to the creditors' argument that Section 522(g) of the Bankruptcy Code only permitted the debtors to claim exemptions in property recovered by the Chapter 7 trustee after the date of filing if the original transfer to the 1988 trust was involuntary. The bankruptcy court found that Section 522(g) of the Bankruptcy Code was not controlling and did not prohibit the debtors from asserting the claimed exemptions.

The issues on appeal, as framed by appellants in their opening brief, include the following:

1. Did the bankruptcy court err in the legal conclusion that the assets of the debtors' retirement trust, which the chapter 7 trustee recovered from the possession, custody and control of the debtors' daughter in a separate adversary proceeding for turnover of such property, were eligible for claims of exemption?

2. Did the bankruptcy court err in its decision to grant an exemption for 100% of the benefits due and payable on the Presidential Life annuity contract after the petition date?

3. Did the bankruptcy court err in its decision that the United of Omaha annuity contract was entirely exempt from the bankruptcy estate?

Appellants then go on to characterize the primary and dispositive issue as being "whether or not the [debtors] may properly claim exemptions for the items of property that they attempted to transfer beyond the reach of their creditors and that were later recovered by the trustee through the avoiding powers conferred upon the trustee under the Bankruptcy Code." The appellants contend that "because Section 522(g) of the Bankruptcy Code does not allow a debtor to exempt property recovered pursuant to the avoiding powers of a bankruptcy trustee if the debtor had transferred the property voluntarily, the bankruptcy court's decision allowing them to exempt the property from the estate is erroneous as a matter of law." Alternatively, the appellants contend that the bankruptcy court erroneously applied applicable Wyoming statutes to permit the debtors to exempt the two annuity contracts from their estate.

The debtors-appellees assert the following issue on cross appeal:

Whether the bankruptcy court erred in denying the debtors' claim of exemption in their vehicle?

## Standard of Review

■ The bankruptcy court's findings of fact will not be disturbed unless they are clearly erroneous. Fed.R.Bankr.P. 8013. The bankruptcy court's conclusions of law, however, may be reviewed *de novo*. *In re Hart*, 923 F.2d 1410, 1411 (10th Cir.1991); *Hall v. Vance*, 887 F.2d 1041, 1043 (10th Cir.1989).

The Tenth Circuit also stated the following regarding review of the bankruptcy proceedings by the district court in *In re Uniol, Dalton Development Project # 1 v. Unsecured Creditors Committee*, 948 F.2d 678, 681 (10th Cir.1991):

> In reviewing the decision of the bankruptcy court, the district court is bound to accept the bankruptcy court's findings of fact unless they are clearly erroneous, but may examine its conclusions of law *de novo*. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986). A bankruptcy court's factual determinations will not be disturbed on appeal absent "the most cogent reasons appearing in the record." *In re Reid*, 757 F.2d 230, 233–34 (10th Cir.1985).

We likewise review the bankruptcy court's factual findings under the clearly erroneous standard, while its conclusions of law are reviewable *de novo*. *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir. 1987).

## Discussion

■ This Court finds that the bankruptcy court's determination that the property at issue was part of the debtors' bankruptcy estate should be affirmed. Section 541 of the Bankruptcy Code defines property of the bankruptcy estate. This section, provides in relevant part, as follows:

> (a) The commencement of a case under section . . . 303 [involuntary cases] of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in prop-

erty as of the commencement of the case.

> \* \* \* \* \* \*
>
> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor[.]
>
> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.
>
> \* \* \* \* \* \*

11 U.S.C. § 541.

■ In Wyoming, the law is clear that a trust by which "the alienation of the settlor's beneficial interest is restrained, is invalid as to creditors." *Spratt v. Security Bank of Buffalo*, 654 P.2d 130, 136 (Wyo.1982). In that case, the Wyoming Supreme Court also held that trusts created to delay, hinder or defraud creditors are considered invalid. *Id.* at 137. The 1988 trust document provides that it is to be governed by the law of the state of Wyoming. Consequently, the debtors' interests under the 1988 trust can be reached by creditors and the clause is unenforceable under applicable nonbankruptcy law.

Because the purported restriction on the transfer of the debtors' beneficial interests in the 1988 trust is invalid under Wyoming law, Section 541(c)(2) of the Bankruptcy Code does not except the 1988 trust property from property of the estate. The 1988 trust's spendthrift clause is not enforceable under applicable nonbankruptcy law and the language of Section 541(c)(2) does not apply to prevent the trust property from coming into the bankruptcy estate.

The Tenth Circuit's decision in *In re Baum (Connolly v. Baum)*, 22 F.3d 1014 (10th Cir.1994), is instructive. In that case, the bankruptcy trustee appealed a summary judgment order upholding the validity of two

trusts he had sued to include in the debtor's bankruptcy estate. The Tenth Circuit noted that Colorado, as would Wyoming, would hold "void in a suit on behalf of creditors a trust in which the settlor is the sole beneficiary or has the sole power to reach the trust property." *Baum*, 22 F.3d at 1017. In *Baum*, the circuit court affirmed the district court's decision upholding an irrevocable trust, where the settlor was not sole beneficiary and did not have the power to revest the trust property in himself. The *Baum* court found that the trust property was not property of the bankruptcy estate.

Having determined that the 1988 trust assets are indeed property of the debtors' bankruptcy estate, the Court must next determine whether the bankruptcy court erred when it upheld the debtors' claimed exemptions in the Presidential Life annuity, the United of Omaha annuity, and refused to uphold the exemption claimed with respect to the 1986 Nissan Maxima. This Court must also review the bankruptcy court's decision regarding the date upon which the exemptions claimed should be determined.

■ This Court agrees with the bankruptcy court's conclusion that the correct date for determining which property of the debtor will be subject to exemptions in an involuntary bankruptcy case is the date of filing. Section 522(b)(2)(A) of the Bankruptcy Code provides, in relevant part, that the property that may be claimed as exempt by a debtor is:

> (2)(A) any property that is exempt under Federal law, ... or State or local law that is applicable *on the date of the filing of the petition* at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition[.]

11 U.S.C. § 522(b)(2)(A) (emphasis supplied). The clear language of the statute requires the Court to hold that exemptions are determined on the date of filing. Thus, this Court must analyze Wyoming law as it applies to the various items the debtors have claimed as

exempt property, as of May 31, 1989, the date that the involuntary Chapter 7 petitions were filed in this case.

■ On May 31, 1989, the debtors were entitled to exempt certain personal property from their bankruptcy estate, including motor vehicles used in a person's trade or business. Wyo.Stat. § 1–20–106. No other exemption for motor vehicles had been enacted by the Wyoming legislature on that date.[3] The applicable Wyoming exemption statute then in effect provided:

> (a) The following property, when owned by any person, is exempt from levy or sale upon execution, writ of attachment or any process issuing out of any court in this state and shall continue to be exempt while the person or the family of the person is moving from one (1) place of residence to another in this state:

> \*     \*     \*     \*     \*     \*

> (b) The tools, a motor vehicle, team, implements or stock in trade of any person, used and kept for the purpose of carrying on his trade or business, not exceeding in value two thousand dollars ($2,000.00), or the library, instruments and implements of any professional person, not exceeding in value two thousand dollars ($2,000.00), are exempt from levy or sale upon execution, writ of attachment or any process out of any court in this state.

Subsequent cases interpreted this statute to require that a motor vehicle be used directly in the performance of a person's employment duties in order for the exemption to apply. *See Johnston v. Barney*, 842 F.2d 1221, 1222–23 (10th Cir.1988). The bankruptcy court's conclusion that the 1986 Nissan Maxima was not property subject to the then-applicable exemption statute is not clearly erroneous. Mr. Pancratz was retired on the date of filing of the petition; Mrs. Pancratz was a homemaker not working outside of the home.

---

**3.** Wyo.Stat. § 1–20–106(a)(iv) created a specific exemption for a motor vehicle not exceeding in value two thousand dollars ($2,000.00), regardless of whether the motor vehicle was used in trade or business. The effective date of this exemption was June 8, 1989, a date after the May 31, 1989 petition dates in this case.

■ The statute permitting the exemption of annuity contracts and upon which the debtors based their exemption claim provides:

(a) The benefits, rights, privileges and options which under any annuity contract issued are due or prospectively due the annuitant, are not subject to execution nor is the annuitant compelled to exercise any such rights, powers or options. Creditors are not allowed to interfere with or terminate the contract, except:

(i) As to amounts paid for or as premium on the annuity with intent to defraud creditors, with interest thereon, and of which the creditor gives the insurer written notice at its home office prior to the making of the payment to the annuitant out of which the creditor seeks to recover, which notice shall specify:

(A) The amount claimed or facts to enable the ascertainment of the amount; and

(B) Facts to enable the insurer to ascertain the annuity contract, the annuitant and the payment sought to be avoided on the ground of fraud.

(ii) The total exemption of benefits presently due and payable to any annuitant periodically or at stated times under all annuity contracts under which he is an annuitant shall not at any time exceed three hundred fifty dollars ($350.00) per month for the length of time represented by the installments, and any periodic payments in excess of three hundred fifty dollars ($350.00) per month are subject to garnishee execution to the same extent as are wages and salaries;

(iii) If the total benefits presently due and payable to any annuitant under any annuity contracts at any time exceed three hundred fifty dollars ($350.00) per month, the court may order the annuitant to pay to a judgment creditor or apply on the judgment, in installments, that portion of the excess benefits as to the court appear just and proper, after regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him, as well as any payments required to be made by the annuitant to other creditors under prior court order.

(b) If the contract provides, the benefits, rights, privileges or options accruing under that contract to a beneficiary or assignee are not transferable nor subject to commutation, and if the benefits are payable periodically or at stated times, the same exemptions, and exceptions contained in this section for the annuitant, apply to the beneficiary or assignee.

Wyo.Stat. § 26–15–132 (June 1988 Repl.).

The bankruptcy court held that, under this statute, the United of Omaha Annuity Contract No. 404938 was entirely exempt because no payments were "presently due and payable" on the petition date. The bankruptcy court also found that the accounting of the Pancratz Retirement Trust did not show any payments had been received from this annuity. These findings are not clearly erroneous and will not be reversed by this Court on appeal.

■ As to the Presidential Life Annuity Contract No. 526075, the bankruptcy court found that it was paying to the debtor Thomas Pancratz monthly annuity payments in the amount of $1,969.74. It further found that, on the petition date, that the amount presently due and payable was $1,969.74. The bankruptcy court determined that the statute provided that amounts of the total payment in excess of $350.00 were only exempt to the "same extent as are wages and salaries." Decision on Joint Objection to Second Claim of Exemptions at 10.

The creditors had argued that amounts in excess of $350.00 were subject to garnishment only if the payment qualified as personal earnings. The bankruptcy court rejected that argument, stating:

Instead, it means that the exempt amount is to be determined by the same formula used to determine the non-exempt portion of an entirely different category of property. Thus, the court must determine the formula used to determine the extent to which wages and salaries are garnishable

under Wyoming statute and then apply that same formula to the amount of the payment due at the time of the petition date.

At the time of the entry of the order for relief, wages and salaries were 75% exempt. W.S. § 1–15–108(b) (1977 & Rep. 1988). Seventy five percent (75%) of $1,969.74 is $1,214.80. Thus, the sum of $1,214.8[0], plus $350, or a total of $1,564.80 out of the payment presently due and payable, is exempt.

The bankruptcy court, in its decision discussing the Presidential Life annuity, continued:

> However, it must be remembered that just as the petition date determined the rights of the debtors to claim exemptions, so does the petition date determine the rights of the estate in the property. The estate succeeds only to the rights in the annuity contract that the debtors had on the date of the petition. That right was to receive the $1,969.74 that was presently due and payable.
>
> This interpretation is supported by the reference in subsection (ii) of § 26–15–133(a) establishing that any excess of presently due and payable benefits over $350 is "subject to garnishee execution to the same extent as are wages and salaries." Under W.S.1977 § 1–15–408(a) (June 1988 Repl.), a creditor can reach no more than judgment debtor's "accrued and unpaid" earnings at the time of the writ. If the writ is not served on the date of the end of a particular pay period when earnings are deemed to accrue, the writ is deemed to have been served on the next regular pay day.
>
> However, each writ is limited to only one (1) pay period. Wyoming Statutes do provide for a continuing garnishment that attaches earnings that are "to become due." W.S.1977 § 1–15–502(a) (1983) Repl.). However, even this continuing garnishment attaches no more than a maximum of 90 days' worth of future earnings and even that is conditional upon the employment relationship continuing. *Id.* at § 1–15–502(b).

> Under the Presidential Life Annuity contract, Mr. and Mrs. Pancratz are only to receive payments for their lifetime. If Mr. Pancratz predeceases Mrs. Pancratz, the entire payment goes to her for her lifetime. In the event of both their deaths, the remaining monthly payments do not go to their estate, but to other named individuals. This treatment is typical of annuity contracts. Accordingly, the exemption for only those benefits presently "due and payable" on the petition date eliminates the uncertainty of treatment of prospective benefits which, due to the death of the beneficiary, may never become due. Therefore, the post-petition payments, except for the payment due on the first regular date following the petition, are exempt. Therefore, this court concludes that the estate has no right to the future payments which were not due and payable on the petition date.

Decision on Joint Objection to Second Claim of Exemptions at 10–12. This Court finds the bankruptcy court's decision with respect to the Presidential Life annuity is well-reasoned and not contrary to Wyoming law.

█ Further, in construing the statute in question, this Court is guided by the general principle that exemption statutes are to be liberally construed so as to effect their beneficent purposes. *Lingle State Bank of Lingle v. Podolak,* 740 P.2d 392, 394 (Wyo.1987); *Geist v. Converse County Bank,* 79 B.R. 939, 944 (D.Wyo.1987); *Johnston v. Barney,* 842 F.2d 1221, 1223 (quoting *Pellish Bros. v. Cooper,* 47 Wyo. 480, 38 P.2d 607, 609 (1934)).

Construing a statute providing for a personal earnings exemption, the Wyoming Supreme Court stated:

> Under the rule adopted by most of the courts in this country, that, in view of the fact that such statutes are enacted for the purpose of saving debtors and their families from want by reason of misfortune or improvidence, they will be liberally construed to accomplish that purpose[.] ... The meaning is that in no case shall these amendments reduce the exemption to less than $50. It is in the nature of a finding by the Legislature that the exemption of a less sum than $50, out of the earnings of

the debtor for 60 days, would not accomplish the purpose of the statute to preserve the family of the debtor from want.

*Lafferty v. Sistalla,* 11 Wyo. 360, 72 P. 192, 193 (1903).

The Wyoming Supreme Court has consistently interpreted exemption laws liberally and in a manner calculated to protect improvident or unfortunate debtors. This Court believes the Wyoming Court will continue to take a position which will promote these policy considerations in the future.

The bankruptcy court's interpretation of Wyo.Stat. § 26–15–132 gives effect to the plain language of the statute and attempts to construe the statute so no part is inoperative or superfluous, as required by Wyoming law. *Coones v. Federal Deposit Ins. Corp.,* 796 P.2d 803, 804 (Wyo.1990). In the absence of any Wyoming statutory or case law requiring another interpretation of Wyo.Stat. § 26–15–132, the bankruptcy court's determinations regarding the two annuity contracts at issue in this case will be affirmed.

Accordingly, it is hereby **ORDERED** that the April 13, 1992 Order on Second Claim of Exemptions and Decision on Second Claim of Exemptions, of the United States Bankruptcy Court for the District of Wyoming, be, and hereby are, **AFFIRMED in all respects.**