**In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtor.**

**Bankruptcy No. 1–91–00100.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Dec. 24, 1997.

See also 216 B.R. 611.

Stephen Karotkin, New York City, Douglas S. Tripp, Cincinnati, OH, for EPI.

Christopher H. Buckley, Washington, DC, John L. Taylor, Jr., Atlanta, GA, Lawrence R. Elleman, Cincinnati, OH, for Caradon.

Neal J. Weill, Assistant U.S. Trustee, Cincinnati, OH.

## DECISION ON MOTION OF EAGLE–PICHER INDUSTRIES, INC. RE CARADON DOORS AND WINDOWS, INC.

BURTON PERLMAN, Bankruptcy Judge.

Reorganized debtor Eagle–Picher Industries, Inc. ("EPI") has filed a Motion for Order Enforcing the Plan and the Confirmation Order to Stay Actions of Caradon Doors and Windows, Inc. (the "Motion"). Caradon was held liable for patent infringement in a suit by Therma–Tru Corporation. The subject of the patent in question was fiberglass skins. Such fiberglass skins had been sold by EPI's predecessor. (That predecessor was the pre-confirmation debtor Eagle–Picher Industries, Inc. in the captioned bankruptcy case. Hereafter, the term "debtor" will be used to refer to that entity.) Caradon has now filed suit against EPI in a Georgia U.S. District Court (the "Georgia suit") seeking damages on a number of theories. Caradon states that it limits its claim for damages to post-petition (i.e., post-January 7, 1991) damages.

EPI has accompanied its Motion with an excerpt from its Schedule A–3 filed in its bankruptcy case listing Peachtree Doors, Inc., Caradon's predecessor, as a creditor; affidavit of David E. Troller; copy of the Order on Confirmation of Plan; and a copy of Caradon's complaint in the Georgia court. Caradon has filed Memorandum in Opposition to the Motion of EPI, and in support of its position proffers the affidavits of William Russell Hall, Jr. and Bruce P. Morine.

We first comment upon our jurisdiction in this matter. EPI observes that this court has jurisdiction pursuant to 28 U.S.C. § 157 and § 1334(b). By these statutes, jurisdiction over bankruptcy matters is conferred upon the U.S. District Court. By reason of the general order of reference entered by the

District Court for the Southern District of Ohio, pursuant to 28 U.S.C. § 157(a), the District Court has referred those matters to this court. In addition, EPI relies upon §§ 9.8 and 9.10 of the Plan, which are included in Article 9, Retention of Jurisdiction. These provide:

> 9.8 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan (and all Exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

> \* \* \*

> 9.10 To determine such other matters that may be set forth in the Plan, the Confirmation Order, the Claims Trading Injunction, or the Asbestos and Lead PI Permanent Channeling Injunction, or that may arise in connection with the Plan, the Confirmation Order, the Claims Trading Injunction, or the Asbestos and Lead PI Permanent Channeling Injunction;

EPI also asserts that this court has jurisdiction to interpret and enforce its own orders, thereby referring to the Order on Confirmation of Plan. On the question of jurisdiction, it is pertinent to note the relief sought by EPI on its present Motion. EPI seeks an order (i) finding that Caradon's conduct in filing the Georgia suit is in violation of the Plan, the Confirmation Order, and § 524 of the Bankruptcy Code, and also (ii) directing Caradon to cease any further acts to attempt to enforce a claim against EPI and to remedy all prior violations, including but not limited to, dismissing with prejudice the Georgia suit. Caradon opposes the present Motion, and asserts that it should be allowed to pursue the Georgia suit. In the alternative, Caradon says that its claims should be treated as administrative expense claims.

We hold that we have jurisdiction to determine whether Caradon has violated the injunction of § 524 and § 1141 of the Bankruptcy Code, the Plan and/or the Confirmation Order, hereafter referred to collectively as "the confirmation injunction." We do not, however, have jurisdiction to consider the

merits of Caradon's claims if they are free thereof. If there is no violation of the confirmation injunction, Caradon may pursue its claims in the Georgia suit. Consequently, the extensive briefing by the parties of the merits of the claims asserted by Caradon in the Georgia suit is irrelevant to our present consideration. (There is a dispute between the parties with respect to whether the claims asserted by Caradon in the Georgia suit are pre-petition or post-petition claims, EPI contending the former position and Caradon the latter. We deem the dispute between the parties as to whether the claims asserted by Caradon are pre- or post-petition to be unnecessary of resolution, and assume for purposes of the present discussion that they are post-petition.)

We turn, therefore, to the question of whether the act of Caradon in filing the Georgia suit is violative of the confirmation injunction. EPI bases its contention that there has been such a violation on §§ 524(a) and 1141 of the Bankruptcy Code. Indeed, the latter at § 1141(d)(1)(A) expressly states that confirmation of a Chapter 11 plan "discharges the debtor from any debt that arose before the date of such confirmation...." Section 524(a)(2) then adds:

(a) A discharge in a case under this title—

\* \* \*

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

\* \* \*

In addition, § 12.2 of the Plan enjoins creditors from taking any action against debtors on a pre-confirmation debt. Finally, the Confirmation Order discharges debts that arose pre-effective date, at paragraph 10.

Caradon takes issue with this position of EPI and contends that it is entitled to relief for post-petition acts of the DIP, notwithstanding the confirmation injunction. Caradon says: "Because no bar date for the filing of post-petition claims was ever established

and because Caradon, a known creditor, never received notice of the confirmation hearing or any information about the Plan, any 'discharge' of post-petition claims, and any related provision of the Plan that purports to require post-petition claims be liquidated in this Court, does not affect Caradon's ability to assert its post-petition claims in the Georgia action." Caradon asserts that it cannot be disputed that it was a known creditor because it was listed as a creditor in the bankruptcy schedules of Eagle–Picher.

EPI then rejoins that Caradon was not a known creditor, and therefore was not entitled to actual notice of the confirmation hearing. EPI argues that Caradon never put Eagle–Picher on notice of any potential claims that it believed it had against Eagle–Picher. Indeed, EPI says that this failure justified it in believing that Caradon had abandoned any claim that it might have against it. In the end, it is the position of EPI that, since Caradon was not a known creditor, its notice by publication of the confirmation hearing was sufficient to satisfy the requirements of due process with respect to Caradon.

The following are not disputed by the parties and we find them as facts for this controversy:

1. Debtor filed its bankruptcy case on January 7, 1991.

2. The bar date in the bankruptcy case for filing non-asbestos-related proofs of claim was October 31, 1991.

3. Debtor's plan was confirmed November 18, 1996, with an effective date of November 29, 1996.

4. Caradon is the successor in interest to Peachtree Doors, Inc. ("Peachtree").

5. Peachtree was scheduled as a creditor in debtor's bankruptcy schedules.

6. Peachtree was given actual formal notice of debtor's bankruptcy and claims bar date. Neither Peachtree nor Caradon filed a claim by the bar date.

7. Caradon was not given actual formal notice of the confirmation hearing in debtor's bankruptcy case.

8. Because of the allegations contained in paragraph 60 of the complaint in Caradon's Georgia suit, it appears that in that suit Caradon is seeking relief for acts of debtor that occurred subsequent to January 7, 1991 (and so post-petition) and through October 26, 1995 (and so pre-confirmation). This decision therefore is written on the basis that Caradon has placed in issue acts of debtor, all of which occurred during debtor's bankruptcy.

9. Further facts will be found in the ensuing discussion.

■ The significance of the known-unknown creditor dichotomy discussed by the parties is that it is well established that known creditors are entitled to actual written notice, while for unknown creditors notice by publication will generally suffice. *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995); *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir.1987), *cert. dismissed* 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988). In the case before us, there is no dispute that Caradon was not given actual written notice of the confirmation hearing. The question then becomes, on the facts of this case, was Caradon bound by the terms of the confirmation order notwithstanding the absence of such notice. We hold that it was, and that the requirements of due process as to Caradon's post-petition claims were satisfied by debtor's service by publication of notice of the confirmation hearing.

■ We reach this conclusion on two alternative bases which follow from the facts before us. The first basis is that Caradon has abandoned any right it may have had to assert a pre-filing or pre-confirmation claim. True, its predecessor was listed as a creditor, and was initially treated as a creditor by the debtor which listed it in its bankruptcy schedules. That is, it was given notice of the bar date for filing pre-petition claims. While a pre-petition claim may have existed (it was scheduled as disputed, contingent, unliquidated), Caradon's predecessor filed no claim. Caradon continued after the bankruptcy filing to purchase fiberglass skins from the debtor. Thereby claims no different from any pre-petition claims which may have existed, accrued to Caradon post-petition. Caradon litigated the patent infringement claim against it by Therma–Tru. The debtor assisted Caradon in that litigation. Yet never during the pendency of the bankruptcy case, despite its full knowledge of the bankruptcy, and the continuing accrual of whatever claims it might have had, did Caradon indicate to the debtor that it intended to assert a claim against it. This we hold to be an abandonment of its claim by Caradon. In re *Chicago, Rock Island and Pac. R.R. Co.*, 788 F.2d 1280, 1283 (7th Cir.1986); *In re Charter Co.*, 125 B.R. 650, 655 (M.D.Fla.1991).

■ We hold that Caradon is bound by the confirmation injunction on another basis as well. That basis is that Caradon, with respect to any post-petition claim, was an unknown creditor, as that term is used in bankruptcy parlance. After all, a "known creditor" is one that a debtor reasonably can expect to assert a claim. Here, as the facts recited above make clear, the debtor was affirmatively led to believe that Caradon did not intend to assert a claim. Apart from its inaction with regard to any pre-petition claim, Caradon failed to file any claim during the pendency of the bankruptcy, though the claim it pursues in the Georgia suit arose entirely during the bankruptcy. We hold therefore that the claim now asserted by Caradon was of the character of claims which "although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950), cited with approval in *Chemetron Corp. v. Jones, supra*, at 346. We conclude and hold that Caradon's due process rights as to its post-petition claim were satisfied by debtor's service by publication of notice of the confirmation hearing.

Caradon in its briefing resists the impact of these decisions, and asserts that the cases it cites, *City of New York v. New York, New Haven and Hartford R.R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) and *In re Maya Constr. Co.*, 78 F.3d 1395, 1398 (9th Cir.1996), require that it had received actual notice of the confirmation hearing before it can be said that the require-

ments of due process have been satisfied. Caradon's reliance on these authorities is misplaced. Caradon's cases can be distinguished on their facts. In the *City of New York* case, the lower courts had held that claims could be barred by a bar date of which creditors had been notified only by publication. The U.S. Supreme Court held that actual formal notice to known creditors of the bar date for the filing of claims was required before creditors lost their rights to file claims. In the situation before us, the question dealt with by the court in *City of New York* is not present, for here Caradon was given actual, formal notice of the bankruptcy and of the claims bar date. Caradon seeks to extend the holding of *City of New York* to its situation, where it was not given actual formal notice of the confirmation hearing. For this proposition, Caradon cites *In re Trans World Airlines, Inc.*, 96 F.3d 687, 690 (3d Cir.1996). Other cases not cited by Caradon, from the Tenth Circuit, also might be taken to support this proposition. *See e.g., Reliable Elec. Co., Inc. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984); *In re Unioil*, 948 F.2d 678 (10th Cir.1991).

In coming to grips with these cases, it is essential to recognize separate events in the life of a Chapter 11 bankruptcy case. An early event is notice of the bankruptcy which is given to scheduled creditors, that is, pre-petition creditors. Such notice is sent either simultaneously with notice of a bar date for filing claims, or the bar date notice may be sent somewhat later though ordinarily early in the case. The last event in a Chapter 11 bankruptcy case is the confirmation hearing, an event which occurs later, after the debtor has been given an opportunity to develop a plan of reorganization. Creditors are then given notice of the confirmation hearing. In *Reliable Electric* and in *Unioil*, the complaining creditors did not receive actual formal notice *either* of the bar date for filing claims, or of confirmation, though they had actual knowledge of the bankruptcy. Those cases are distinguishable from the case now before us, because here Caradon was given actual formal notice of the bar date, and it took no action; it filed no claim. The distinction to which we have referred above, between *Reliable Electric* and *Unioil* on the one hand,

and the case before us on the other, is recognized in the *Trans World Airlines* case which is cited by Caradon. The *Trans World Airlines* court held that pre-petition claims would not be recognized though no notice of the confirmation hearing had been given to the creditor. It distinguished *Reliable Electric* because *Reliable Electric* in holding prepetition claims not precluded, did not consider that notice of the bar date and failure to act by that date might bar the claim. *See In re Trans World Airlines, supra*, at 690 n. 1. Consistent with this reasoning is *In re Christopher*, 28 F.3d 512 (5th Cir.1994), (court holds that a post-petition creditor, with knowledge of the pendency of a Chapter 11 case, is precluded from pursuing a state court action based on post-petition acts of the debtor, though the claimant did not receive actual notice of the confirmation hearing—due process satisfied where the claimant had actual notice of the pendency of the bankruptcy at the time when its claims arose).

■ Caradon argues as an alternative to its position that due process requirements free it from the confirmation injunction, that its post-petition claim should be regarded as a demand for payment as an administrative expense. The pertinent statute, so far as here relevant, is:

### § 503. Allowance of administrative expenses

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

* * *

Caradon relies for case authority, which it says supports its contention that its claim qualifies as an administrative expense, on *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968); *In re Wall Tube and Metal Products Co.*, 831 F.2d 118 (6th Cir.1987); *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867 (2d Cir.1971); *In re Cambridge Biotech Corp.*, 186 B.R. 9 (Bankr.D.Mass.1995). In response, EPI contends that there is no room for such an argument because Caradon's

claim was filed post-confirmation, and Caradon is bound by the plan provisions which contemplate that all administrative expense claims will be filed prior to confirmation. There is a threshold question, whether the claim asserted by Caradon in the Georgia suit can be classified as an administrative expense. Because EPI offers no objection to such classification, we will assume arguendo that such claim can be so classified.

We hold that Caradon cannot escape the confirmation injunction even if its Georgia suit claim is treated as an administrative expense. This is so for reasons which follow from our earlier discussion. Caradon's assertion of such claim cannot be said to be "timely." Caradon's Georgia suit claim existed throughout debtor's bankruptcy case, but Caradon did nothing to pursue it until after confirmation, though it had actual, formal notice of the bankruptcy. Nor has Caradon shown any "cause" as the statute provides which would permit a tardy filing of Caradon's request. The requirements that an administrative expense request be "timely" filed, or tardily filed "if permitted by the court for cause," were added to 11 U.S.C. § 503 by the 1994 amendments to the Bankruptcy Code. We find nothing in the legislative history to assist us in applying the amended language, and there is a paucity of case law on the subject. We do, however, find support for our conclusion in *In re Aspen Limousine Serv., Inc.*, 193 B.R. 325, 338 (D.Colo.1996), where the court said:

> An administrative claim filed without cause just minutes before a confirmation hearing is set to commence is untimely, particularly where, as here, the lawsuit upon which the claim is based had been filed "months prior."

In the proceeding before us, Caradon did not even assert its claim prior to confirmation, even though the facts giving rise to it were known to Caradon throughout the bankruptcy, and even prior to it.

Additionally, it follows from our earlier discussion that notice by publication of the confirmation hearing sufficed to make Caradon subject to the provisions of the plan, and, as contended by EPI, the plan provided for the handling of administrative claims. It left no room for the filing of an administrative claim after confirmation.

In light of the foregoing discussion, we hold that the motion of Eagle–Picher Industries, Inc. is well taken. Caradon's conduct in filing the Georgia suit, which is limited to seeking relief for acts of debtor during its bankruptcy, is in violation of the Plan, the Confirmation Order, and §§ 524 and 1141 of the Bankruptcy Code. Any further effort to pursue the Georgia suit will be in derogation of the injunctive provisions to which we have referred above.